## EDISON v. LUBIN.

(Circuit Court of Appeals, Third Circuit. April 20, 1903.)

No. 23.

**1. COPYRIGHT—PHOTOGRAPH—SERIES OF INSTANTANEOUS PICTURES.**

> A series of 4,500 pictures, representing the launching of a vessel, were taken by means of a camera on a celluloid film in rapid succession, and from this a positive reproduction was made by light exposure on another celluloid sheet, adapted to be used in a magic lantern or similar device to reproduce the same scene at different instants of time. *Held*, that such sheet was a "photograph," and subject to copyright as such in its entirety.

**2. SAME—MARKING ARTICLE.**

> Such sheet was duly marked by the attaching of a plate at one end bearing the notice of copyright.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 119 Fed. 993.

Howard W. Hayes, for appellant.

Charles N. Butler and Gustavus Sickles, for appellee.

Before ACHESON, Circuit Judge, and BUFFINGTON and KIRKPATRICK, District Judges.

BUFFINGTON, District Judge. In the court below, Thomas A. Edison, appellant, filed a bill in equity against Sigmund Lubin, appellee, praying an injunction for alleged infringement of a copyright. That court, being of opinion (see 119 Fed. 993) such copyright had no statutory warrant, entered a decree dismissing the bill, whereupon complainant took this appeal. The question involved is novel, interesting, and, within its sphere, important. The complainant's operator, by means of a pivoted camera of special construction, designed and owned by complainant, took in rapid succession, on a single highly sensitized celluloid film 300 feet long, 4,500 pictures, each of which was a shade different from its predecessor and successor, and all of which collectively represented at different points Kaiser Wilhelm's yacht Meteor while being christened and launched. From this film or negative a positive reproduction was made on a celluloid sheet by light exposure. The value of such celluloid reproduction is that by means of an appliance similar to a magic lantern these views may be thrown on a screen in rapid succession so as to give the effect of actual motion, and pictorically reproduce the launching precisely as it took place. This positive celluloid sheet was sent by the complainant to the Department of the Interior, and by it copyrighted to him as proprietor under "the title of a photograph, the title to which is in the following words, to wit, 'Christening and Launching Kaiser Wilhelm's

¶ 1. Matter subject to copyright, see note to Amberg File and Index Co. v. Shea, Smith & Co., 27 C. C. A. 248.

Yacht Meteor.' " The complainant thereafter placed on the copies thereof issued by him a notice of copyright inscribed on a celluloid plate fastened on the front and at one end of the sheet. From the other end of one of such marked articles about one-third thereof was detached by some unknown person, and came into the hands of respondent, without knowledge on his part of its having been copyrighted. The 1,500 pictures on this part, which represented a part of the launch, Lubin photographed on a sensitized celluloid film. From this negative he reproduced a positive on a celluloid sheet, which was, of course, an exact reproduction of the copyrighted one of the complainant. These were sold to exhibitors, and enabled them to reproduce the part of the launch therein represented.

The act of Congress of July 8, 1870, Rev. St. § 4952 [U. S. Comp. St. 1901, p. 3406], under which the Department of the Interior issued this copyright, provides:

"Any citizen of the United States * * * who shall be * * * the author or proprietor of any * * * photograph or negative thereof * * * shall upon complying with the provisions of this chapter have the sole liberty of printing, reprinting, publishing, completing, copying, executing, finishing and vending the same."

Does such act warrant the granting of this copyright? On that question the court below said:

"That section extended the copyrighting system to 'any * * * photograph,' but not to any aggregation of photographs, and I think that, to acquire the monopoly it confers, it is requisite that every photograph, no matter how or for what purpose it may be conjoined with others, shall be separately registered, and that the prescribed notice of copyright shall be inserted upon each of them."

The court also held that, as the violation of a copyrighted photograph was a subject of penalty under a subsequent section, the section authorizing the copyright must be strictly construed. An examination shows that the negative and its positive reproduction represent one act or event, to wit, the launch of the yacht. This launch was portrayed on a single negative film, by one operator and a camera, operated from a single point, and such negative simply photographically reproduces in continuous form the view of the launch presented to the eye of an onlooker at the spot occupied by the camera. The instantaneous and continuous operation of the camera is such that the difference between successive pictures is not distinguishable by the eye, and is so slight that the casual observer will take a very considerable number of successive pictures of the series, and say they are identical. It is only when pictures far removed from each other in the series are compared that differences are seen, but in every one the platform from which the christening took place, and on which prominent persons attending the launch stood, is depicted. To require each of numerous undistinguishable pictures to be individually copyrighted, as suggested by the court, would, in effect, be to require copyright of many pictures to protect a single one. So much for the negative.

122 F.—16

When we consider the positive sheet which was copyrighted, we have a stronger case. What was thus copyrighted was a single celluloid sheet, on which a number of objects had been photographically printed or reproduced. That these objects were there portrayed by light action or photography is unquestioned. No matter how the negative was obtained, whether by numerous and successive exposures, is not here material. The statute provides for copyrighting negatives; but the present issue is not whether the negative in question was one covered by the statute, but whether, when the negative, as a whole, was photographically reproduced, the reproduction was a photograph. On that point we feel assured. When the reproduction was made, complainant's celluloid negative simply possessed the reproductive capacity by light action incident to the photographic art. The image, which had been thrown by light reflected from the originals and passed through a camera to produce the negative, in the reproductive process produced the positive by light action passed through such transparent negative. The mere circumstance that such positive is pictured on a strip of celluloid, and not on a strip of paper, is immaterial. In either event, the reproduction is a light-written, and therefore a photographic picture or photograph. To say that the continuous method by which this negative was secured was unknown when the act was passed, and therefore a photograph of it was not covered by the act, is to beg the question. Such construction is at variance with the object of the act, which was passed to further the constitutional grant of power "to promote the progress of science and useful arts." When Congress, in recognition of the photographic art, saw fit in 1865 to amend the act of 1831 (13 Stat. 540), and extend copyright protection to a photograph or negative, it is not to be presumed it thought such art could not progress, and that no protection was to be afforded such progress. It must have recognized there would be change and advance in making photographs, just as there has been in making books, printing chromos, and other subjects of copyright protection. While such advance has resulted in a different type of photograph, yet it is none the less a photograph—a picture produced by photographic process. From the standpoint of preparatory work in securing the negative, the latter consists of a number of different views, but when the negative was secured the article reproduced therefrom was a single photograph of the whole. And that it is, in substance, a single photograph, is shown by the fact that its value consists in its protection as a whole or unit, and the injury to copyright protection consists not in pirating one picture, but in appropriating it in its entirety.

We are further of opinion the photograph in question met the statutory requirement of being intended to be perfected and completed as a work of the fine art. It embodies artistic conception and expression. To obtain it requires a study of lights, shadows, general surroundings, and a vantage point adapted to securing the entire effect. In Bolles v. The Outing Company, 23 C. C. A. 594, 77 Fed. 966, depicting a yacht under full sail was held to constitute an original work of art; and in view of the recent decision of the Supreme Court

(Bleistein v. Donaldson Company, 102 O. G. 1553, 23 Sup. Ct. 298, 47 L. Ed. ——) in reference to the character, in that regard, of a circus poster, we have no question that the present photograph sufficiently fulfills the character of a work of the fine arts.   We are also of opinion the sheet was duly marked, for it was such as "to give notice of the copyright to the public by placing upon each copy in some visible shape the name of the author, the existence of the claim to exclusive right, and the date at which this right was obtained," which in Burrow-Giles Co. v. Sarony, 111 U. S. 755, 4 Sup. Ct. 279, 28 L. Ed. 346, was said to be the object of the statute.

The decree of the court below is therefore reversed, with directions to enter a decree for the complainant.