### LOUIS DE JONGE & CO. v. BREUKER & KESSLER CO.

(Circuit Court, S. E. D. Pennsylvania.   October 2, 1910.)

No. 1, October Sessions, 1906.

1. COPYRIGHTS (§ 10\*)—MATTERS SUBJECT TO COPYRIGHT—LABEL—PRINT.

Plaintiff was the owner of a small painting in water colors, described as "Holly, Mistletoe, and Spruce." It consisted of a representation of small branches or sprigs of the flowers of holly, mistletoe, and spruce arranged in the form of an open cluster, having substantially the outline of a square. The painting was artistic in thought and execution; the intention being to multiply the design for fancy paper to cover boxes and other articles for the holiday season. · *Held*, that a reproduction would not be a "label," and, though it might be a "print," and be properly regarded as designed to be used for an article of manufacture, it could with equal propriety be described as a pictorial illustration or work connected with the fine arts, and was, therefore, subject either to copyright, as authorized by Act June 18, 1874, c. 301, 18 Stat. 78 (U. S. Comp. St. 1901, p. 3411), or might be patented, at the owner's election, under Rev. St. § 4929 (U. S. Comp. St. 1901, p. 3398); but the owner could not have protection under both acts.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. §§ 8, 13; Dec. Dig. § 10.\*

Matter subject to copyright, see note to Cleland v. Thayer, 58 C. C. A. 273.]

2. COPYRIGHTS (§ 36\*)—EFFECT.

Where a picture was subject to copyright, and also patentable as a design, and the owner elected to copyright it, he was bound by his election, and was only entitled to protection under, and by complying strictly with, the copyright act.

[Ed. Note.—For other cases, see Copyrights, Dec. Dig. § 36.\*]

3. COPYRIGHTS (§ 29\*)—REPRODUCTION—NOTICE.

Where a copyrighted picture was intended to be reproduced and used as a design for fancy paper to cover boxes and other articles for the holiday season, and twelve complete copies were lithographed and printed on one sheet, the picture having been so printed that each copy would join harmoniously with its neighbors and the repeated design would produce a pleasing decorative effect, each one of the reproductions should have been accompanied by a copyright notice in order to protect the design; a single notice on each sheet, to serve as notice to the manufacturer of the boxes, being insufficient.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. §§ 29, 30; Dec. Dig. § 29.\*]

In Equity.  Suit by Louis De Jonge & Co. against the Breuker & Kessler Company.  On final hearing.  Judgment for defendant.

See, also, 147 Fed. 763.

C. P. Goepel and S. D. Cozzens, for complainants.
Frank S. Busser and G. J. Harding, for defendant.

J. B. McPHERSON, District Judge.   This suit concerns the copyright upon a painting.   The dispute arose before the passage of Act March 4, 1909, c. 320, 35 Stat. 1075 (U. S. Comp. St. Supp. 1909, p.

1289), and is to be decided under the statutes previously in force. The facts are not in controversy and may be stated as follows:

In September, 1905, the plaintiff copyrighted a small painting in water colors, describing it in these words:

"Holly, Mistletoe, and Spruce. The painting consists of the representation of small branches or sprigs of the flowers of holly, mistletoe, and spruce arranged in the form of an open cluster, the cluster having substantially the outline of a square."

For present purposes infringement may be assumed. The principal defense is that the painting was not the subject of copyright at all, but should have been patented under section 4929 of the Revised Statutes (U. S. Comp. St. 1901, p. 3398), as a design for an article of manufacture. In my opinion the testimony does not sustain this defense. Whatever force the argument may possess, where a painting is obviously a mere design and can be nothing else, it is not persuasive where the painting may with equal propriety belong either to the fine or to the useful arts. It clearly appears that the painting now in question is artistic in thought and execution, and it was therefore entitled to protection by a copyright, if a copyright was desired. It appears just as clearly that neither the artist nor his patron intended to reproduce the painting as such a work of art is ordinarily reproduced, but intended to multiply it as a design for a fancy paper to cover boxes and other articles for the holiday season. Nevertheless, when the painting left the artist's hand, it was of such a character as made it eligible either for copyright or for patenting, at the option of the author or owner. As it seems to me, Act June 18, 1874, c. 301, 18 Stat. 78 (U. S. Comp. St. 1901, p. 3411), did not forbid it to be copyrighted. A reproduction would certainly not be a "label," and, while no doubt it might be a "print," and might with propriety be regarded as "designed to be used for [an] article of manufacture," it could with equal propriety be described as a "pictorial illustration or work connected with the fine arts"—quite as accurately as the circus posters that were thus classified in Bleistein v. Donaldson, etc., Co., 188 U. S. 239, 23 Sup. Ct. 298, 47 L. Ed. 460—and therefore it could not be definitely assigned for the present purpose either to the fine or to the useful arts, until the author or the owner decided under which statute he would protect his property.

It is, I think, difficult to see how a painting that may be either copyrighted or patented can be said to be "designed" for one rather than for the other form of protection until the author or owner makes his final choice. Up to that time he may do what he pleases with his property. If he chooses to copyright it as a work of art, he may do so; if he prefers to patent it as a design, he is free to do this also; and the mere fact that he originally intended to take one of these courses rather than the other does not prevent him from changing his purpose at the last moment. His state of mind upon this matter has nothing to do with the quality of the painting; and it is this quality, and not the intention of the author or owner, that determines what protection may be given to the artist's work.

In the present instance the artist was commissioned to produce a design for the useful arts; in executing the commission, he produced

a painting of artistic excellence, original and pleasing, merely regarded by itself as a picture, and also original and ornamental as a design; and with such a work in his possession the owner or author might treat and protect it in either of its aspects. Since it was qualified for admission into the two statutory classes, I see no reason why it might not be placed in either. But it could not enter both. The method of procedure, the term of protection, and the penalties for infringement, are so different that the author or owner of a painting that is eligible for both classes must decide to which region of intellectual effort the work is to be assigned, and he must abide by the decision. Ordinarily, of course, there is no difficulty. Not many paintings are suitable for use as designs, and only a few designs possess the qualities demanded by the fine arts. But it is easily conceivable that here and there a painting may be eligible for either class, and the water color in question is, I think, an excellent example. Such a work may be used in both the fine and the useful arts; but it can have protection in only one of these classes. The author or owner is driven to his election, and must stand by his choice.

The precise question is apparently of first impression. None of the cases that I have examined seems to decide it, as a brief review may make clear. Scoville v. Toland (1848) Fed. Cas. No. 12,553, merely decided that a label asserting the excellence of a medicine and intended to be affixed to a bottle was not a "book," and was not the subject of a copyright. This ruling was cited with approval in Higgins v. Keuffel, 140 U. S. 428, 11 Sup. Ct. 731, 35 L. Ed. 470. In Rosenbach v. Dreyfuss (D. C., 1880) 2 Fed. 217, the articles in question were "prints of balloons and hanging baskets, with printing on them for embroidery, and cutting lines showing how the paper may be cut and joined to make the different parts fit together, and not intended as a mere pictorial representation of something"; and it was held that they were not copyrightable. The act of 1874 was considered, and the articles were decided not to be "pictorial illustrations or works connected with the fine arts," but "prints or labels designed to be used for other articles of manufacture." This being so, they did not belong to the fine arts, and could not be copyrighted, although they might be patented under section 4929 of the Revised Statutes. As the syllabus correctly states, Ehret v. Pierce (C. C., 1880) 10 Fed. 553, decided only that:

"An advertising card devised for the purpose of displaying paints of various colors, consisting of a sheet of paper having attached thereto square bits of paper painted in various colors, each square having a different color, with some lithographic work surrounding the squares advertising the sale, of the colors, is not the subject of a copyright"

—there being no artistic quality in the device. In Yuengling v. Schile (C. C., 1882) 12 Fed. 97, it was held that copies of a chromo lithograph entitled "Gambrinus and His Followers" were protected by copyright, although they were intended, used, and circulated as a gratuitous advertisement for the benefit of the plaintiff's private business as a brewer, and not for the instruction or improvement of the public. The picture was not a design in any sense; it was reproduced separately in the usual manner. In the course of the opinion Judge Brown said (page 100):

"The plaintiff's chromo in the present case is not a mere engraving or print of any article which the complainant offers for sale. It is a work of the imagination, and has such obvious artistic qualities as in my judgment render it fairly a subject of copyright, without regard to the use which the plaintiff has made, or may intend to make, of it. Where the work in question is clearly one of artistic merit, it is not material in my judgment whether the person claiming a copyright expects to obtain his reward directly through a sale of the copies, or indirectly through an increase of profits in his business to be obtained through their gratuitous distribution."

In Schumacher v. Schwencke (C. C., 1885) 25 Fed. 466, it was decided that a painting upon which artistic skill had been expended was copyrightable although it could be readily lithographed and used as an advertising label. Judge Coxe's language is as follows:

"It is contended by the defendants that the complainant's painting was designed as a label for cigar boxes. This, it is said, is evidenced by its size, and by the fact that copies appear to be advertised in complainant's catalogue of labels. That lithographic copies are applicable to this purpose cannot be denied. They may also be used for many other purposes. The proof in this case discloses some of them. But the subject of the copyright is, in fact, a painting, executed by an artist with pencil and brush, and can itself be used only as paintings are used. The fact that copies may be utilized for advertising purposes does not change the character of the original. If the painting itself is to be considered a label because copies may be so used, no masterpiece would escape such desecration. It will hardly do to call the Sistine Madonna or the Aurora labels, because by the sacrilege of modern enterprise copies of Raphael's Cherubs or Guido's Goddess may be transferred to a blacking box or a perfumery bottle. Were it contended that this painting was intended exclusively for a label, or as the first step in making a label, a much stronger case for the defendants would be presented. But such is not the fact, and it is clear from the affidavits that it cannot be established by evidence."

In Schumacher v. Wogram (C. C., 1888) 35 Fed. 210, it appeared that the plaintiffs were manufacturers of prints or labels, selling them for the purpose of being affixed to cigar boxes and other articles. They copyrighted a picture representing a young woman holding a bouquet of flowers, entitled "Nosegay." From this they struck off prints, which they sold to dealers in cigars, substituting the words "Opera Bouquet" (a name descriptive of a brand of cigars) in place of the word "Nosegay." An action was brought to restrain infringement of some of these prints. Judge Wallace denied a motion for a preliminary injunction, saying:

"The facts show an attempted evasion by the plaintiffs of the provisions of section 3 of the act of Congress of June 18, 1874, 'to amend the law relating to patents, trade-marks, and copyrights.' That section declares in substance that no prints or labels designed to be used for any article of manufacture can be copyrighted, but authorizes them to be registered and protected as trade-marks in proper cases. If the experiment of the plaintiffs can succeed, this statute is inoperative whenever the prints or labels contain a pictorial illustration; and it could be wholly nullified by the device of printing pictures on the labels. The case of Schumacher v. Schwencke [C. C.] 25 Fed. 466, is distinguishable from the present, because in that case the court found that the picture copyrighted was not made to be used for labels."

Evidently, I think, none of these cases determines the exact question presented by the facts now being considered, namely, whether a painting possessing artistic merit, but suitable also for use as a design, may at the owner's election be protected either by copyright or by patent?

As already indicated, I believe the question should be answered in the affirmative. But it follows that, if the owner or author treat the picture as belonging to the fine arts and protect it by copyright, he must strictly obey the copyright laws. He must treat each reproduction as a separate copy of the original, and must mark it as Congress has prescribed. Reasonable freedom in the form of marking is permitted, if the substantial requisites are present (Blume v. Spear [C. C., 1887] 30 Fed. 629; Burrow-Giles Co. v. Sarony, 111 U. S. 53, 4 Sup. Ct. 279, 28 L. Ed. 349); but as far as I am advised the requirement has not been relaxed that each separate reproduction of a copyrighted painting must bear the statutory notice (Pierce, etc., Co. v. Werckmeister, 72 Fed. 57, 18 C. C. A. 431). The case of Edison v. Lubin (C. C. A., 3d Circuit) 122 Fed. 240, 58 C. C. A. 604, is not at all in conflict with this statement. It was there held that a sheet containing a series of 4,500 small pictures, intended to be reproduced in a motion camera, was a single "photograph," and was protected by a single copyright notice attached to one end of the sheet. The reproduction of the subject-matter was not complete until every small picture had contributed its share to the total effect. Being, therefore, essentially a single "photograph," one marking was enough.

In the present case the plaintiff did not attempt to reproduce the painting separately in order to sell the copies in that form. On the contrary, twelve complete copies were lithographed and printed upon one sheet; the picture having been so painted that each copy would join harmoniously with its neighbors, and the repeated design would thus produce a pleasing decorative effect. But there were twelve reproductions of the painting, while the sheet was marked in only one place with the notice required by law. In other words, the plaintiff, having copyrighted a work of the fine arts, attempted to reproduce it as if it had been patented as a mere design, and has naturally got into a fatal difficulty. The copyright could only protect the reproductions if each separate copy should be marked, and as this was not done the statutory protection was vitiated. It is argued for the plaintiff that notice need only be given to the purchaser of the sheets, who is ordinarily the manufacturer of the boxes or other articles to be covered, and that a single marking upon each sheet is ample for this purpose. But this argument ab inconvenienti can have no weight against the positive command of the statute. The plaintiff would perhaps have had no trouble about notice if the picture had been patented as a design. It was intended for such a use, and the protection that was needed could have been best obtained under section 4929. But as another kind of protection was also available, and was chosen, its express requirements must be strictly obeyed. The court need not be astute in finding a way to give the plaintiff the appropriate protection that was offered by Congress, but was not accepted.

It is no doubt true that difficult questions are sometimes presented to the Librarian of Congress in the administration of the copyright statutes, but in the nature of the subject such questions cannot be always avoided. If a painting is obviously artistic, it is, I think, entitled to copyright, whatever the applicant may intend to do with the reproductions. Whether he can adequately protect them under the copy-

right law, and still use them as he may wish, is his affair.  His common sense will be likely to inform him correctly upon this subject. If, however, the painting is obviously a mere design, lacking in such artistic quality as entitles it to be ranked among the productions of the fine arts, copyright may be properly refused.  And it is not difficult to conceive of a third situation in which the Librarian may well be in doubt what his decision should be.  In that event it is probable that he may find it most desirable not to interfere with the applicant's choice, leaving him to take the consequences of his election.  As it seems to me, if applicants understand clearly that they cannot apply for protection of one kind and hope to receive protection of the other, they will probably be very careful to ask for precisely what they want.

The bill may be dismissed at the plaintiff's costs.