UNITED STATES *v.* McLAUGHLIN & FREEMAN (No. 3563)[1]

United States Court of Customs and Patent Appeals, December 5, 1932

*Charles D. Lawrence*, Assistant Attorney General (*William Whynman* and *Ralph Folks*, special attorneys, of counsel), for the United States.
*Joseph F. Lockett* (*Edward P. Sharretts* of counsel) for appellee.

[Oral argument October 13, 1932, by Mr. Folks and Mr. Sharretts]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This appeal involves the claim that certain merchandise, consisting of pictures or images on glass, is dutiable as "photographs" rather than as "articles in chief value of glass."

[1] T. D. 46059.

The collector classified the merchandise as "articles in chief value of glass" and assessed it for duty at 55 per centum ad valorem under paragraph 218 of the Tariff Act of 1922.

The importer protested the classification, relying solely upon the claim that the articles were dutiable at 25 per centum ad valorem under paragraph 1310 of said act by virtue of the *eo nomine* provision "photographs."

The United States Customs Court, First Division, sustained the protest and the Government has appealed here.

The merchandise is represented by Exhibit 1, which is the glass and picture portion of the importation, and we are not here concerned with the frame in which the same appeared at the time of importation. Exhibit 1 is a piece of thin glass about 6½ inches by 3 inches in dimensions. The picture on the glass consists of what appears to be a silhouette in black of a girl and children with a dog, running over grass and leaping over a low bush. There is also an ornamental border around the picture composed of black lines and blocks.

The method of production is described in the opinion below as follows:

A plain piece of glass (illustrative Exhibit A) is taken as the first step. This piece of glass is thoroughly cleansed, taken into a dark room and there sensitized. Afterwards it is placed on a rack to dry. After being dried, the sensitized plate (Exhibit B) is placed in a photographic frame which fits in a camera. The subject to be photographed is put on a board on the camera frame, the sensitized plate (Exhibit B) is placed in the camera, and the photographic apparatus is focused to the size desired. The sensitized plate (Exhibit B) is then subjected to a strong electric light for the necessary length of time, and the picture is taken as a negative on the sensitized plate (Exhibit B). The picture is then developed by the necessary chemicals and becomes a developed negative, being a photograph of the object. This is illustrated by Exhibit C.

This exhibit is then tinned or dryed, which produces illustrative Exhibit D, containing a photograph of the object on the glass. Illustrative Exhibit D is then taken to a printing room, a sensitized plate laid on top of it, and both are placed together in a frame, which is termed a photographic printing box, or copying box. This frame, with the two plates, is then exposed to a strong light, by the action of which the photograph is transmitted from the negative (illustrative Exhibit D) to the positive (Exhibit E). This is termed "contact printing." This produces the positive Exhibit E. The production of Exhibit E is performed by "printing" from Exhibit D. Then the unfinished positive plate, illustrative Exhibit E, is taken to the spraying room, where the gold background is sprayed on the back of the glass, and we have the finished picture, represented by Exhibit 1.

The pertinent portions of the paragraphs involved in this appeal follow:

PAR. 218. * * * and all articles of every description not specially provided for, composed wholly or in chief value of glass or paste, or combinations of glass and paste, blown or partly blown, in the mold or otherwise, or colored, cut, engraved, etched, frosted, gilded, ground (except such grinding as is necessary for fitting stoppers or for purposes other than ornamentation), painted, printed

in any manner, sand-blasted, silvered, stained, or decorated or ornamented in any manner, whether filled or unfilled, or whether their contents be dutiable or free, 55 per centum ad valorem;  *  *  *.

PAR. 1310.  *  *  * photographs,  *  *  * 25 per centum ad valorem;  *  *  *.

This is the third time this particular kind of merchandise has been before this court.  In *McLaughlin & Freeman* v. *United States*, 17 C. C. P. A. (Customs) 302, T. D. 43717, this court, on an entirely different record from that presented here, and while of the impression that the merchandise under consideration consisted of the picture, frame and all, held the merchandise was more than "photographs" and expressly declined to pass upon the question as to whether or not the photographic images on glass were photographs within the meaning of the paragraph. .

A rehearing was granted, and during the hearing a stipulation was entered into between the parties to the effect that the dutiable classification of the frames and pasteboard backgrounds was not involved.  On the record before it the court found that the additional treatment of the glass, after the image had been made by the photographic process, rendered the article more than a photograph. We there said, however, *McLaughlin & Freeman* v. *United States*, 18 C. C. P. A. (Customs) 128, T. D. 44094:

It is to be remembered that paragraph 1310 of the Tariff Act of 1922 is a part of Schedule 13, Papers and Books.  Glass materials or articles are nowhere mentioned in that schedule.  We do not mean to hold that this fact of itself would preclude photographs on glass from being classified thereunder, since photographs are therein mentioned *eo nomine.*  *  *  *

As was stated in our former opinion, the "burden rested upon the appellant to show that these articles should be classified" as it contends rather than as the collector found.  In view of the treatment which was given the glass upon which the images were impressed, we do not think it has succeeded in so doing.

In the case at bar the importer introduced eight witnesses, seven of whom were photographers and testified to the effect that spraying the gilt lacquer on the back of the glass and over the filmed image completed the photograph, and that the photograph would not be complete without it.  The testimony is to the effect that the picture which appears upon the positive plate is the same kind of picture and made in the same way as if it were put on paper, except that it is transposed and put underneath the glass which requires a lacquer or coating for protection; that if a transparent lacquer were put on it would protect the picture, but that the article then would be the character of photograph known as a transparency and that the gilt lacquer serves the additional purpose of changing the transparent nature of the picture, thereby making the figures of the picture stand out more prominently.

We think the witnesses' testimony that the pictures on glass constituted photographs is in entire harmony with the dictionary

definition of a photograph and with decided cases on that question. The definition of a photograph in Webster's New International Dictionary (1925) was quoted in both the *McLaughlin & Freeman* cases, *supra*, as—

1. A picture or likeness obtained by photography.

In *United States* v. *Sussfeld*, 1 Ct. Cust. Appls. 51, 52, T. D. 31030, this court, in considering the scope of paragraph 403 of the Tariff Act of 1897, which provided for "photographs," quoted the Standard Dictionary definition of a photograph which was as follows:

\* \* \* a picture taken by photography; a picture due to the action of light on a sensitized film which may have for a support glass, celluloid, paper, or other suitable material.

In that case the court held that celluloid picture films—moving pictures—were "photographs" under paragraph 403 of the Tariff Act of 1897, which paragraph was in the paper schedule, and cited with approval *Edison* v. *Lubin*, 122 Fed. 240, wherein the Circuit Court of Appeals, Third Circuit, held pictures on strips of celluloid to be photographs in a tariff sense and said:

The mere circumstance that such positive is pictured on a strip of celluloid, and not on a strip of paper, is immaterial. In either event, the reproduction is a light-written, and therefore a photographic picture or photograph.

In the record now before us, the witnesses testified that photographs were made on paper, celluloid, enamel, metal, and imitation ivory, and illustrative exhibits of photographs on imitation ivory, metal, and enamel were introduced in evidence. It was shown in each such instance that a coat of lacquer over the image was necessary for its preservation.

The witnesses explained the difference between the exhibit at bar and a regular paper photograph. In the paper photograph the image is placed directly upon the paper, which is opaque and requires no backing, while in the case of the exhibit at bar, owing to the transparency of the article on which the image is placed, a backing of some kind is required. The witnesses point out that the image on any photographic material, including paper, must be covered with lacquer or treated in some manner in order that the image may be preserved.

The evidence clearly establishes that these exhibits are produced by the photographic process, and that whatever is done to them after the image is placed upon the glass is a process of finishing the photograph.

While it is true, as was pointed out in the last decided *McLaughlin & Freeman* case, *supra*, that the word "photographs" appears in the paper and book schedule which contains no mention of glass articles, we see no good reason why the photographs at bar should not be classified thereunder upon the theory that Congress, by the use of

the *eo nomine* expression "photographs," was concerned more about the article itself than the material of which it was composed.

The provision for "photographs" in the Tariff Act of 1922, as far as affects the issue here, is substantially the same as it has been in all tariff acts since 1897. The holdings of the courts have been as above indicated, and if Congress had not intended a classification of photographs on glass as "photographs" it would seem that some legislative provision bringing about such result would have been enacted.

We conclude that the merchandise involved responds to the term "photographs" in paragraph 1310 and that the decision of the court below was proper and should be and is *affirmed*.