JONES BROS. CO. v. UNDERKOFFLER
et al.

No. 1067.

District Court, M. D. Pennsylvania.

Oct. 17, 1936.

John F. McCanna, of Wilson, Dowell, McCanna & Wintercorn, of Rockford, Ill., and Carpenter & Carpenter, of Sunbury, Pa., for plaintiff.

Schaffer & Schaffer, of Sunbury, Pa., for defendants.

JOHNSON, District Judge.

This is a bill in equity alleging infringement of plaintiff's copyright.

Plaintiff is a corporation engaged in manufacturing and selling memorials. It employed one Edward R. Peterson, a designer, to create an original design for a memorial. Peterson designed the "Ruther" memorial and plaintiff duly applied for a copyright thereon. A certificate of copyright registration was issued to the plaintiff under class G of the Copyright Act, for a design for a work of art, entitled "Ruther Memorial by Edward G. Peterson, published on December 17, 1932."

Plaintiff made photographs of the "Ruther" memorial and placed the specifications on the back thereof. The copyright notice was on the photograph. These were issued to various retail memorial dealers, one of whom was Guy L. Heckert. Heckert called on the defendant Kauffman and exhibited various photographs of memorials, one of which was the "Ruther." Kauffman considered the "Ruther" and desired a one-piece base instead of a two-piece base and wreaths on the wings of the die. Heckert gave to Kauffman the "Ruther" photograph together with an estimate covering the building and erection of the "Ruther" memorial with the desired changes. Subsequently Kauffman took the "Ruther" photograph to the defendant Underkoffler, a monument dealer, and told him that he, Kauffman, wanted a memorial on the design of the "Ruther" with certain changes, and desired an es-

timate, provided the memorial would not infringe the "Ruther" copyright. Underkoffler then traced the "Ruther" design directly from the "Ruther" photograph and made pencil sketches of the proposed changes. Underkoffler took this sketch to one Deckman, a representative of Cross Brothers Company, advised him that the sketch was taken from the "Ruther" design copyrighted by the plaintiff and asked whether the memorial could be made without infringement. Deckman replied that there were sufficient changes to overcome the infringement, and forwarded a sketch to Cross Brothers Company, a memorial manufacturer. Cross Brothers Company prepared a full-size drawing, which was submitted to Kauffman by Underkoffler. Kauffman approved the sketch; Underkoffler ordered the memorial from Cross Brothers Company and signed an agreement to furnish the memorial of certain specifications, the die of which was identical in size with the "Ruther." The agreement also contained a promise to keep Kauffman harmless of any infringement of copyright design. The memorial was built by Cross Brothers Company and installed on the Kauffman lot in the Pomfret Manor Cemetery at Sunbury, Pa., by the defendant Underkoffler. After the monument was erected, and before Kauffman paid for it, he required Underkoffler to obtain from Cross Brothers Company a letter for the purpose of holding him harmless from infringement.

The principal defense is that the design for a cemetery monument is not copyrightable as a design for a work of art, since a monument is not a work of the fine arts, but should have been patented as a design for an article of manufacture.

The Copyright Act of 1909, § 1, 17 U.S.C.A. § 1, provides that "any person entitled thereto, upon complying with the provisions of this Act [title], shall have the exclusive right: (a) To print, reprint, publish, copy, and vend the copyrighted work; (b) * * * to complete, execute, and finish it if it be a model or design for a work of art." Section 5 (17 U.S.C.A. § 5) provides that "the application for registration shall specify to which of the following classes the work in which copyright is claimed belongs: * * * (g) Works of art; models or designs for works of art." The Design Patent Law of 1902 (35 U.S.C.A. § 73) provides for a design patent to "any person who has invented any new, original, and ornamental design for an article of manufacture."

It is significant that in the present Copyright Act Congress omitted the word "fine" which formerly appeared before the word "art" in connection with models or designs. Fine art is "Art which is concerned with the creation of objects of imagination and taste for their own sake and without relation to the utility of the object produced." The fine arts are "Painting, drawing, architecture, and sculpture (these four being often called the arts of design). * * *" Manufacture is "the process or operation of making wares or any material produced by hand, by machinery or by other agency * * * anything made from raw materials by the hand, by machinery, or by art. * * *" Art is "systematic application of knowledge or skill in effecting a desired result. Also an occupation or business requiring such knowledge or skill; a craft; as industrial arts." Webster's New International Dictionary (2d Ed.). In Pellegrini v. Allegrini et al. (D.C.) 2 F. 610, 611, District Judge Dickinson said: "It is not necessarily a 'work of art,' something displaying artistic merit, but it is 'objet d'art'—something upon which the labors of an artist as such have been employed."

It is apparent that under the above definitions of manufacture and art a certain object may be an article of manufacture as well as a work of art and the design therefor might well come under the Design Patent Law as a design for an article of manufacture or under the Copyright Act as a design for a work of art. On this point, Weil on Copyright Laws says, at page 227:

"The Act of May 9, 1902, provides that any new original and ornamental designs for an article of manufacture may be patented. This Act is not specifically repealed by the present Copyright Code, but if such manufactured articles are to be 'objects of art' it would appear that designs therefor may be copyrighted as 'writings' whether or not they may be patented.

"It is deemed that it is merely a matter of legislative intention and procedure whether many forms of expression, lying on the borderland between copyright and

patent, be subject to the Copyright or Patent Laws, and that such decisions fall into the natural, as distinguished from the artificial, historical, domain of copyright. Such designs would accordingly appear both copyrightable and patentable."

The Design Patent Law and the Copyright Law afford different types of protection. Pelligrini v. Allegrini et al., supra. The method of procedure, the term of, protection, and the penalties for infringement are different under each act. Louis De Jonge & Co. v. Breuker & Kessler Co. (C.C.) 182 F. 150, 151. In a case which comes under either statute, it becomes a matter of choice by the author or owner whether he will seek protection under the patent or copyright law. In the last-cited case above, the court said: "Nevertheless, when the painting left the artist's hand, it was of such a character as made it eligible either for copyright or for patenting, at the option of the author or owner. * * * Since it was qualified for admission into the two statutory classes, I see no reason why it might not be placed in either. But it could not enter both. The method of procedure, the term of protection, and the penalties for infringement, are so different that the author or owner of a painting that is eligible for both classes must decide to which region of intellectual effort the work is to be assigned, and he must abide by the decision."

The complete "Ruther" memorial is clearly an object of art as well as an article of manufacture. The Ruther design is an artistic drawing fairly within the fine arts and was entitled to copyright as a design for a work of art. The design came within rule 12 of the Rules and Regulations for Registration of Claims to Copyright: "But the registration in the Copyright Office has been made to protect artistic drawings notwithstanding they may be afterwards utilized for articles of manufacture."

The defendants contend, further, that the "Ruther" design is not the original work of the author, but that all of the essential elements were in common use prior to plaintiff's copyright. The defendants introduced testimony and numerous exhibits to show that the essential elements of the "Ruther" design were used prior to plaintiff's copyright. The true test of originality is whether the produc-

tion is the result of independent labor or of copying. Drone on Copyright, p. 208. In Emerson v. Davies, 3 Story, 768, 779, 8 Fed.Cas. 615, No. 4,436, Justice Story said: "In truth, in literature, in science and in art, there are, and can be, few, if any, things, which, in an abstract sense, are strictly new and original throughout. * * * It is a great mistake to suppose, because all the materials of a work or some parts of its plan and arrangements and modes of illustration, may be found separately, or in a different form, or in a different arrangement, in other distinct works, that therefore, if the plan or arrangement or combination of these materials in another work is new, or for the first time made, the author, or compiler, or framer of it, (call him which you please), is not entitled to a copy-right. The reverse is the truth in law, and, as I think, in common sense also." Plaintiff's testimony shows that the design was the independent work of the artist Peterson and that it was not copied from any other work. Defendants' testimony does not contradict this, and their numerous exhibits do not show any work similar to the "Ruther" or any one having a plan or arrangement or combination of elements as in this "Ruther" design.

The defendants further contend that the copyright law does not protect the plaintiff from the manufacture, in another medium, of the design copyrighted. The copyright grants the exclusive right "to complete, execute and finish it if it be a model or design for a work of art." The Copyright Act has been held to afford protection to the copyrighted idea against infringement by manufacture in other media. In Falk v. T. P. Howell & Co. (C.C.) 37 F. 202, it was held that the copyright of an artistically designed photograph was infringed by the manufacture of a chair with an imitation of the photograph stamped in raised figure on the leather bottoms and backs. In King Features Syndicate v. Fleischer et al. (C.C.A.) 299 F. 533, 535, it was held that the copyrighted book of cartoons known as "Barney Google and Spark Plug" was infringed by the manufacture and sale of a toy, an exact reproduction of the horse, "Spark Plug." The court there said: "We do not think it avoids the infringement of the copyright to take the substance or idea, and produce it through a different medium, and

picturing in shape and details in sufficient imitation to make it a true copy of the character thought of by the appellant's employee. * * * The concept of beauty expressed in the materials of statuary or drawing, is the thing which is copyrighted. That is what the infringer copies. The Copyright Act [see 17 U.S.C.A. § 1 et seq.] was intended to prohibit the taking of this conception. The Copyright Act protects the conception of humor which a cartoonist may produce, as well as the conception of genius which an artist or sculptor may use." In Fleischer Studios v. Ralph A. Freundlich, Inc. (C. C.A.) 73 F.(2d) 276, 278, it was held that a copyrighted book of cartoons picturing "Betty Boop" was infringed by the manufacturer of a "Betty Boop" doll. The court said: "The infringement charged was a reproduction of the Betty Boop cartoon in manufacturing a doll. This, a three-dimensional form of doll, is an infringement of the two-dimensional picture or drawing."

The defendants further contend that they have not infringed the plaintiff's copyright. The test of infringement is whether the defendants have made an original independent production or a copy of the plaintiff's work. In Pellegrini v. Allegrini, supra, the court said: "The test must rest in the finding that the second 'work' is not an original treatment of a subject open alike to treatment by both, but is a copy more or less servile of the first. There may be a strong likeness in the two, and yet such a finding not be made; there may be any number of differences between the two, and yet the finding be unhesitatingly made." The testimony in this case clearly shows that the work of the defendants was not original, but that it was copied with several changes from the copyrighted work. The testimony even shows that the design from which the defendants' monument was made was traced from the copyrighted design. This clearly shows infringement by the defendants.

Proposed findings of fact and conclusions of law which have been submitted are answered and filed herewith.

Upon application, a master will be appointed to report on the damages, costs, and disposition of the infringing memorial.