**STEIN et al. v. MAZER et al.**

**Civ. No. 5879.**

United States District Court, D. Maryland.

Feb. 20, 1953.

Joseph T. Brennan, 2d, Baltimore, Md., George E. Frost, Chicago, Ill., for plaintiffs.

Max R. Kraus, Chicago, Ill., for defendants.

WILLIAM C. COLEMAN, Chief Judge.

This proceeding is for alleged infringement of six copyrights for small three-dimensional statuettes of male and female dancing figures made of semi-vitreous china, registration of which was granted to the plaintiffs by the Copyright Office.

The plaintiffs, husband and wife, are citizens of California, doing business as partners, in Montebello, California, under the name of Reglor of California, in the design and casting of small statuary. The defendants are citizens of Maryland and, as partners, do business under the name of June Lamp Manufacturing Company, in Baltimore, as assemblers of table lamps which they sell, both wholesale and retail, throughout the country.

Registration of the statuettes here in issue was applied for and obtained by plaintiffs in 1950 under section 5(g), Title 17, U.S.C.A., entitled "Copyrights—Classification of Works for Registration", which provides as follows: "The application for registration shall specify to which of the following classes the work in which copyright is claimed belongs: * * *.

"Works of art; models or designs for works of art".

As registered, all of the statuettes are of dancers, male and female, purely ornamental and disclose no lamp attachments, although, with very few exceptions, the

plaintiffs have never sold any of their statuettes other than as complete table lamps, that is, with the statuette figure as the lamp base and the lighting parts fitted thereto,— the electric wiring, sockets, and lamp shades. Similarly, the defendants' statuettes, which are alleged by plaintiffs to infringe their own statuettes and are of identical size, design and conformation, have always been sold by the defendants as table lamps, that is, with the electric wiring, sockets, and lamp shades included,— never merely as statuettes.

Plaintiffs contend that, in spite of the fact that, as registered in the Copyright Office, their statuettes disclose no lamp attachments, they, nevertheless, by such registration, have obtained the right to exclude any one from manufacturing or selling statuettes of the same form and design, regardless of the fact that they may be converted, as defendants have converted their identical statuettes, to a utilitarian purpose, namely, to electric table lamps.

Defendants deny that plaintiffs' copyrights give them any such monopoly, since the registration of the copyrights for plaintiffs' statuettes was secured for them as "Works of art" under the copyright laws, whereas the statuettes that they sell are not "Works of art" as defined in these laws, but are articles of manufacture for utilitarian purposes and, if entitled to protection, such is to be obtained not under the copyright but under the patent laws.

We have already quoted the pertinent provision of the copyright laws under which plaintiffs obtained their copyrights. In furtherance of this provision, the Copyright Office has adopted the following regulation, Regulation 202.8, 17 C.F.R., Chapter II, 202.8; 17 U.S.C.A. following section 207: "Works of art (Class G)—(a) In general. This class includes works of artistic craftsmanship, in so far as their form *but not their mechanical or utilitarian aspects are concerned*, such as artistic jewelry, enamels, glassware, and tapestries, as well as all works belonging to the fine arts, such as paintings, drawings *and sculpture*. Works of art and models or designs for works of art are registered in Class G on Form G, except published three-dimensional works of art which require Form GG." (Emphasis supplied.) Previous regulations going back for a number of years were to the same effect, with only some variation in phraseology.

The Copyright Office, under the jurisdiction of the Library of Congress, upon the filing of an application for copyright registration and the payment of the requisite filing fee, issues a certificate of copyright, provided the application is found to fall within one of the classes for which the copyright law provides, and meets the regulations of the Copyright Office promulgated with relation thereto. Thus, the issuance of the certificate of copyright is a perfunctory matter. The Copyright Office conducts no examination to determine the existence of novelty or invention in the subject matter. The certificate, when issued, is effective for a term of 28 years and may be renewed perfunctorily for another like term.

Under the patent laws, Sections 4929 and 4933 of the Revised Statutes, 35 U.S.C.A. § 73, provision is made for design patents, as follows: "Any person who has invented any new, original, *and ornamental design for an article of manufacture*, not known or used by others in this country before his invention thereof, and not patented or described in any printed publication in this or any foreign country before his invention thereof, or more than one year prior to his application [thereof], and not in public use or on sale in this country for more than one year prior to his application, unless the same is proved to have been abandoned, may * * * obtain a patent therefor.

"All the regulations and provisions which apply to obtaining or protecting patents for inventions or discoveries not inconsistent with the provisions of this title, shall apply to patents for *designs*." (Emphasis supplied.)

The section of the patent laws that deals with infringement of design patents provides as follows, 35 U.S.C.A. § 74: "During the term of *letters patent for a design*, it shall be unlawful for any person other than the owner of said letters patent, without the license of such owner, *to apply the design* secured by such letters patent,

or any colorable imitation thereof, *to any article of manufacture* for the purpose of sale, or to sell or expose for sale any *article of manufacture* to which such design or colorable imitation shall, without the license of the owner, have been applied, knowing that the same has been so applied. * * *." (Emphasis supplied.)

Design patents have been provided for by Acts of Congress since 1842, when the first design patent Act was passed, and a great many design patents on articles of manufacture have been granted throughout the years. See Gorham Mfg. v. White, 14 Wall. 511, 81 U.S. 511, 20 L.Ed 731; Glen Raven Knitting Mills v. Sanson Hosiery Mills, 4 Cir., 189 F.2d 845. Briefly summarized, the procedure in the Patent Office with respect to design patents, is that, upon the filing of an application for such a patent, including a drawing of the design, a description thereof and claim therefor, the Patent Office conducts a critical examination of the pertinent prior art on record in the Patent Office to determine whether the design is new, original, and ornamental, and possesses the quality of invention. If these requirements are met, the Patent Office then may issue a patent for the design for a term of either 3½, 7 or 14 years; at the applicant's election, with a sliding scale of fees. 35 U.S.C.A. §§ 77, 78. Design patents are not renewable. The designs become public property when the patents for them expire.

It is readily apparent from a comparison of the foregoing provisions of the copyright laws relative to "Works of Art" with those of the patent laws relative to ornamental design for articles of manufacture, that there is a distinct difference between what is contemplated by these separate laws. And so it has been stated in numerous decisions. See especially Burrow-Giles Lithographic Co. v. Sarony, 111 U.S. 53, 4 S.Ct. 279, 28 L.Ed. 349; Taylor Instrument Company v. Fawley-Brost Co., 7 Cir., 139 F.2d 98, certiorari denied 321 U.S. 785, 64 S.Ct. 782, 88 L.Ed. 1076.

It is unfortunately true that the Supreme Court has never squarely ruled upon this distinction, as applied to facts such as exist in the case before us. However, in Stein v. Expert Lamp Company, 188 F.2d 611, a decision of the Court of Appeals for the Seventh Circuit, rendered in 1951, where the plaintiffs were the same as in the present case, the distinction between the scope of the copyright and the patent laws was recognized. There, these same plaintiffs sued the Expert Lamp Company for infringement of statuettes very similar to those here involved. The District Court dismissed the complaint, 96 F.Supp. 97, holding that the plaintiffs' submission to the Copyright Office of the statuettes with so-called mounting stubs for electric lamp sockets was evidence of the practical use to which the statuettes were intended to be put, and that the plaintiffs could not monopolize such use under the copyright statute. Plaintiffs petitioned the District Court to reconsider the case on the ground that their counsel had, entirely through inadvertence, mistakenly informed the Court in the course of the original hearing that the statuettes filed with the Copyright Office, on which registration was granted, embodied lamp mounting-stubs, which was not the case. The petition for reconsideration was denied on the ground that what it disclosed was "immaterial to the decision in this case".

On appeal the District Court was affirmed, 188 F.2d 611; rehearing was also denied and the Supreme Court denied certiorari. 342 U.S. 829, 72 S.Ct. 53, 96 L.Ed. 627. The appellate court said 188 F.2d at pages 612–613: "In arguing for a reversal, plaintiffs make the point that the fact that the statuette may be utilized for some pracicable use does not change the character of it. They insist that a sculptured statue is a 'work of art,' and since statuary is registrable matter they are entitled to protection, and the copyrights must be enforced. On the other hand, defendant contends that plaintiffs' copyrights do not cover or protect an electric table lamp, and that the Copyright Office cannot grant a monopoly on such a device. In support of plaintiffs' contention they cite, among other cases, Bleistein v. Donaldson Co., 188 U.S. 239, 23 S.Ct. 298, 47 L.Ed. 460; Pellegrini v. Allegrini, D.C., 2 F.2d 610; and United States

v. Backer, 2 Cir., 134 F.2d 533. *We have examined and considered all the cases cited but are not persuaded that a design of an electric lamp may be protected as a monopoly by means of a copyright registration, registered without an examination as to originality, novelty or inventiveness.* (Emphasis supplied.)

"Congress has provided two separate and distinct classes or fields of protection, the copyright and the patent. Copyright registrations are granted by filing with the Copyright Office two reproductions of the 'work of art' with copyright notice and a fee of $4.00. The Copyright Office makes no examination or search as to the originality or novelty of the claimed 'work of art.' Applications for design patents are filed in the United States Patent Office and are subject to an examination in which the examiner searches through all available publications, prior patents and all prior art available, to determine if the design possesses the qualities requisite to granting a design patent.

"It is true that the Copyright Act protects 'Works of art; models or designs for works of art,' but the Act does not refer to articles of manufacture having a utilitarian purpose nor does it provide for a previous examination by a proper tribunal as to the originality of the matter offered for copyright * * *."

Following the Appellate Court's opinion, the case again came before the District Court on the matter of assessment of attorneys' fees and costs, pursuant to the copyright statute, 17 U.S.C.A. § 116, and in a memorandum opinion the District Judge said [107 F.Supp. 60, 61]: "The pertinent feature compelling the court to make the decision of January 23, 1951 was the submission to the copyright office of plaintiff's statuette 'having the threaded mounting stub to receive a lamp socket'. This technicality and the interpretation accorded the copyright statute defeated the plaintiff's claim."

Plaintiffs, in the present suit, would have us hold that in the Expert Lamp Company case the Court of Appeals did no more than affirm the above quoted narrow interpretation by the District Court of its own

holding, and that as a result we should rule in plaintiffs' favor in the present case, since registration of all the coyprights involved in the present case was granted upon the specimen statuettes deposited with the Copyright Office which were without any lamp attachments. Suffice it to say that we find this reasoning to be entirely without merit. To follow it would be to torture the very language of the appellate court's opinion which we have above quoted, especially the statement, 188 F.2d 611, at page 612, that "We have examined and considered all the cases cited *but are not persuaded that a design of an electric lamp may be protected as a monopoly by means of a copyright registration, registered without an examination as to originality, novelty or inventiveness.*" (Emphasis supplied.) We interpret the phrase in the foregoing, "by means of a copyright registration", as intended to be read as "by means of *any* copyright registration".

■ Thus believing that the Seventh Circuit Court of Appeals is correct in its reasoning and conclusions, its decision should be followed in the present case. In fact, contrary to the contention made by counsel for plaintiffs, that decision is consistent with the long-established practice of the Copyright Office in granting copyrights for artistic lamps of various sorts. The testimony of the present Register of Copyrights was that the provision in section 202.8 of the Copyright Office Regulations, which we have above quoted, that Class (G)—(a) General "Works of art" include "works of artistic craftsmanship, in so far as their form but not their mechanical or utilitarian aspects are concerned", is interpreted by the Copyright Office and by its examiners "to permit them to deal only with the question of whether the work is a work of artistic craftsmanship, and to consider as immaterial whether the work may also have a mechanical or utilitarian aspect." The Register explained that the 1909 amendments to the Copyright Laws changed the specification of "works of the fine arts" to the broader term, "Works of art" because Congress wanted to include some subject matter, as for instance, that of applied design, not yet within the prov-

ince of design patents, but believed to be entitled to copyright protection; and that following this change in the law, the practice developed in the Copyright Office of registering works of art which were determined to be such, even if not works of *fine* art in the strict sense, and even if they had a utilitarian aspect; and that thus, by issuing a certificate of registration the Office purported to give applicant *no* rights so far as any mechanical or utilitarian purpose is concerned.

Counsel for plaintiffs rely upon Stein v. Rosenthal, 103 F.Supp. 227, a decision of the District Court for the Southern District of California. There, the same plaintiffs as those before us sued a citizen of California for infringement of four of the same copyrights here in suit. The Court held there was infringement. We quote at some length the following from the Court's opinion, 103 F.Supp. 227, at pages 229–231: "An Opinion is indicated because contentions have been made that the copyrights involved in this case are invalid for the same reasons which voided the same plaintiffs' copyrights of similar subject matter in Stein v. Expert Lamp Company, 7 Cir., 1951, 188 F.2d 611, Id., D.C., 96 F. Supp. 97. There are points of similarity and also points of dissimilarity between the facts in this case and those in the cited case.

"Plaintiffs are copyright proprietors concerning four copyrights for which the Register of Copyrights has issued certificates of registration in Class H, identified as Certificates 1721, 1723, 1737 and 1738. The certificates relate to statuettes or sculpture entitled Male and Female Curved Ballet Dancers; Egyptian Dancer, Male; and Egyptian Dancer, Female. Under the partnership style Reglor of California, plaintiffs have reproduced and sold many copies in the form of statuettes, each one of which has been marked with the required statutory notice. A few copies of some of the statues were sold simply as statuettes. By far the greater number were wired with electrical assemblies to which lamp shades were attached and were sent to the retail market by plain-

tiffs as the supporting bases of fully assembled table lamps.

"The photographs of the statuettes deposited with the Copyright Office, as part of the claimed copyright in a reproduction of a work of art, are photographs of mere statues alone without electrical assemblies, lamp shades, lamp mounting stubs or any other addition to the purely artistic sculpture. Insofar as the copyright registration shows, the several works registered are statues only. There is no suggestion in any of the several claims to copyright of any claim except the form of the figures. There are no mechanical or utilitarian aspects to the statues. None of the claims to copyright suggest any utilitarian use and if adaptability to such a purpose were to be sought solely from examination of the copyrighted material, the result would be negative.

\*     \*     \*     \*     \*     \*

"Plaintiffs' copies of their protected statues, as used in their lamp business, differed from the copyrighted originals in that they were cast with electrical conduits and mounting stubs added to the sculpture. So were the copies cast for the defendants by Valentino Santi, the third party defendant. In this respect they materially differed from original statues submitted for the registration which had been perfected under Section 5(g) of Title 17, United States Code Annotated. It is this difference which distinguishes this case from Stein v. Expert Lamp Company, 7 Cir., 1951, 188 F.2d 611, Id., D.C., 96 F.Supp. 97. (Both Opinions should be read to get all of the facts.) *But for* the addition of mounting stubs which adapted them to the lamp manufacturer's use, the infringing copies were identical with the non-utilitarian originals depicted on the registration certificates.

\*     \*     \*     \*     \*     \*

"We have been referred to the familiar rule that protection of productions of the industrial arts, utilitarian in purpose and character, even if artistically made or ornamented, depends upon action under the Patent Law rather than the Copyright Act which gives protection to, Section 5(g), 17 U.S.C.A., 'Works of art; models or de-

signs for works of art'. This poses the question whether the registered sculpture is an article utilitarian in purpose and character. The Court holds that as registered, it is not. Each of the statuettes is mere art. It need not be fine art. The word 'fine' was stricken from the Act of March 4, 1909. Jones Bros. Co. v. Underkoffler, D.C., 16 F.Supp. 729. To be eligible it must be not utilitarian in itself. *Having qualified for registration by reason of its purely artistic character, the question presented is whether an intent on the part of the claimant to copy such protected sculpture in such a way as to artistically enhance some separate and utilitarian article of manufacture destroys the right to copyright. The argument that this is so is but another vehicle to carry defendants' philosophy that if the artist intends to profit by his creation he cannot acquire protection. To uphold this argument would be to require the Judicial inquiry to plumb the mind of every copyright proprietor and determine his plans and intentions as of the time of registration. This impossibility is not contemplated by the Statute.*

*"It is recognized that copyright protection existing for original art does not extend to protecting a table lamp which employs a copy of the protected art as part of its ornamentation. The copyright proprietor's right is limited to the right to make or use copies of the protected material.* Bleistein v. Donaldson Lithographing Co., 188 U.S. 239, 23 S.Ct. 298, 47 L.Ed. 460. *This protection is absolute and the copyrighted art under protection of valid copyrights cannot be copied for any purpose without consent of the proprietor. Thus when copied and used, as defendants have used it, in decoration of a utilitarian object, there is an infringement for which damages will be allowed for past infringing acts and injunctive relief issued against future like wrong."* (Emphasis supplied.)

The Rosenthal decision is now on appeal. We find unconvincing the District Court's reasoning in that case, including the interpretation given to the decision of the appellate court in the Expert Lamp Company case, whereby a basis for difference in conclusion is rested upon alleged important factual differences. Therefore, we are not disposed to follow the Rosenthal decision.

For the reasons herein given, the complaint must be dismissed.