POLLUTION ABATEMENT PRACTICES — NO TAX CREDIT GIVEN FARMERS The cost of installation of a water pollution abatement practice adopted by a farmer or rancher such as the construction of detention structures, lagoons, pit tanks or similar devices which prevent solid or liquid wastes from concentrated animal feeding operations (hogs, beef cattle, dairy cattle and poultry) from entering our water resources, would not entitle such farmer or rancher to credit against state income tax liability under the provisions of 82 O.S. 922 [82-922] (1969). The Attorney General has had under consideration your letter wherein you ask, in effect, the following question: Would the cost of installation of a water pollution abatement practice adopted by a farmer or rancher such as the construction of detention structures, lagoons, pit tanks, or similar devices which prevent solid and liquid waste resulting from concentrated animal feeding operations (hogs, beef cattle, dairy cattle and poultry) from entering our water resources, entitle such farmer or rancher to credit against state income tax liability under the provisions of 82 O.S. 922 [82-922] (1969)? It is provided in 82 O.S. 922 [82-922] (1969), that: "Any person, firm, corporation, or other legal entity engaged, or proposing to engage, in the manufacture of any product, the processing of which is certified as provided in Section 4 of this act to result in an unacceptable pollution of the fresh water resources of this state, shall be entitled to an annual credit against his income tax liability, as provided in Section 3 hereinafter of not to exceed Twenty percent (20%) of the net investment cost of installation of such facilities for the treatment, control, or modification of such resulting water pollution for each taxable year following the installation and demonstrated effectiveness of such treatment facilities, until the entire net investment costs thereof shall have been recovered; provided, that the credit allowed to be taken for any one year shall not exceed the income tax liability for such year; and provided further, that the tax credit to be allowed hereunder shall not extend to or include plant operating expense." (Emphasis added) In Foreston v. Heisler, Okl.,363 P.2d 949 (1961), which involved an application for a homestead exemption from taxation, the court stated in paragraph one of its syllabus: "Statutes exempting property from taxation are to be strictly construed against the exemption." For other cases see Magnolia Petroleum Company v. Oklahoma Tax Commission, Okl.,326 P.2d 821 (1958); Dairy Queen of Oklahoma v. Oklahoma Tax Commission, 205 Okl. 473, 238 P.2d 800 (1951); Board of Equalization of Oklahoma County v. Bonner, 185 Okl. 431,93 P.2d 1077 (1939); and Home Buildings and Loan Association of Shawnee v. State, 156 Okl. 859, 9 P.2d 731
(1932). A search for the meaning of the word "manufacturer" as used in Section 82 O.S. 922 [82-922], supra, revealed the following: (1) It is provided in 25 O.S. 1 [25-1] (1961): "Words used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears, and except also that the words in and after explained are to be understood as thus explained." (2) In Cain's Coffee Company v. City of Muskogee,171 Okl. 635, 44 P.2d 50 (1935), the court quoted from Dolese and Shephard Company v. O'Connell, 235 Ill. 43, 100 N.E. 235
(1912), as follows: "The word 'manufacturer' is not to be given its technical meaning. The Century dictionary defines it as 'the production of articles for use from raw or prepared materials by giving these materials new forms, qualities, properties, or combinations, whether by hand labor or by machine'. "Whenever labor is bestowed on an article which results in its assuming a new form, possessing new qualities or new combinations, the process of manufacturing has taken place, whether the thing produced be a small article of commerce or a structure, such as a house, road or bridge." (3) Black's Law Dictionary 1117 (4th Edition 1951), defines the word 'manufacturer' when used as a noun to be: "The process of operation of making wares or any material produced by hand, by machinery or by other agencies; any thing made from raw material by the hand, by machinery, or by art. Jones Bros. Co. v. Undercoffler, D.C.Pa., 16 F. Supp. 729,730. The production of articles for use from raw or prepared materials by giving such materials new forms, qualities, properties, or combinations, whether by hand or machine. Cain's Coffee Company v. City of Muskogee,171 Okl. 635, 44 P.2d 50,52." (4) In 17 A.L.R.3d, "What Constitutes Manufacturing And Who Is A Manufacturer Under Tax Laws", Section 59, p. 131, states in part as follows: ". . .In Holloway v. State (1955) 262 Ala. 437, 79 So.2d 40, the raising of chickens for sale on the market was held not to constitute manufacturing within the meaning of that term as used in a use tax statute. "The Feeding of and dealing in cattle and other livestock was held not within the meaning and operation of a statute providing for the exemption from taxation of the capital stock of corporations 'organized for purely manufacturing purposes,' in Distilling and Cattle Feeding Co. v. People (1896) 161 nl 101, 43 N.E. 779." The Attorney General is of the opinion your question should be answered in the negative. The cost of installation of a water pollution abatement practice adopted by a farmer or rancher such as the construction of detention structures, lagoons, pit tanks or similar devices which prevent solid or liquid wastes from concentrated animal feeding operations (hogs, beef cattle, dairy cattle and poultry) from entering our water resources, would not entitle such farmer or rancher to credit against state income tax liability under the provisions of 82 O.S. 922 [82-922] (1969). (Marvin E. Spears)