HILL v. WHALEN & MARTELL, Inc.

(District Court, S. D. New York.   December 3, 1914.)

No. 9-319.

1. COPYRIGHTS ⬡⟿67—INFRINGEMENT—CARTOON.

The copyright of the cartoons of imaginary characters named "Mutt" and Jeff," the dramatic rights to which were licensed to complainant, is infringed by a dramatic performance in which there are two characters named "Nutt and Giff," who were costumed to represent the cartoon characters, who gave many direct quotations from the cartoons, and who were intended to be understood, and were understood, to be the same characters.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 64; Dec. Dig. ⬡⟿67.]

2. COPYRIGHTS ⬡⟿53—INFRINGEMENT—PARODY.

A copyrighted work is subject to fair criticism, either serious or humorous, and for that purpose may be pictured or quoted, without infringing the copyright.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 51; Dec. Dig. ⬡⟿53.]

3. COPYRIGHTS ⬡⟿53—INFRINGEMENT—PARODY.

One test to determine whether a parody is a mere criticism or a reproduction is whether the parody given is such as will materially reduce the demand for the original by partially satisfying that demand.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 51; Dec. Dig. ⬡⟿53.]

In Equity.   Suit by Gus Hill against Whalen & Martell, Incorporated, to restrain the infringement of a copyright.   Injunction granted.

John J. Sullivan, of New York City, for complainant.
Robert H. Elder, of New York City, for defendant.

ROSE, District Judge. [1] The complainant in this case is the exclusive licensee of the dramatic rights of copyrighted cartoons which purport to show the features of two imaginary individuals to whom the artist has given the names of "Mutt" and "Jeff."   These dramatic rights are of great value.   Mr. Bishop, the artist and author of the cartoons, has from them within a period of three years received between $60,000 and $70,000 in royalties.

The defendant arranged a dramatic performance, which he called "In Cartoonland," and in which he introduced as characters of considerable prominence two personages, to whom he gave the names of "Nutt" and "Giff."   They were "Mutt" and "Jeff."   Everybody so understood, and it was intended that everybody should so understand. They were costumed and made up with that end in view.   The language used by them contained some important direct quotations from the more striking catchwords which had become familiar as the utterances of one or the other of these imaginary beings.   The rest of the words put in their mouths were in substantial harmony with the characters given them by the original artist.   The defendant says that his representation of them was a mere parody or burlesque of the original, and was so intended.

[2] A copyrighted work is subject to fair criticism, serious or humorous. So far as is necessary to that end, quotations may be made from it, and it may be described by words, representations, pictures, or suggestions. It is not always easy to say where the line should be drawn between the use which for such purposes is permitted and that which is forbidden.

[3] One test which, when applicable, would seem to be ordinarily decisive, is whether or not so much as has been reproduced as will materially reduce the demand for the original. If it has, the rights of the owner of the copyright have been injuriously affected. A word of explanation will be here necessary. The reduction in demand, to be a ground of complaint, must result from the partial satisfaction of that demand by the alleged infringing production. A criticism of the original work, which lessened its money value by showing that it was not worth seeing or hearing, could not give any right of action for infringement of copyright.

In this case, I am satisfied that the representation of defendant's "In Cartoonland" was calculated to injuriously affect, and that to a substantial degree it did so affect, the value of complainant's copyright. Those who saw "Nutt" and "Giff" would have less keen a desire to see "Mutt" and "Jeff." Having seen the former, they would be more likely to spend the next dime or quarter they had available for such purpose on a show other than the authorized dramatization of the latter. A good many of them would probably think that they had already seen those characters. They would not be far wrong in so thinking. The next time they would prefer to see something else.

The complainant is therefore entitled to an injunction, and under all the circumstances I think to a decree for $750 and costs.