### KING FEATURES SYNDICATE v. FLEISCHER et al.

(Circuit Court of Appeals, Second Circuit. April 7, 1924.)

No. 290.

1. Copyrights ⊂⇒53—"Copy" defined.
    Under Copyright Act 1909, § 1 (Comp. St. § 9517), giving the owner of a copyright the exclusive right to copy the copyrighted work, a "copy" is that which ordinary observation would cause to be recognized as having been taken from, or the reproduction of, the original.
    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Copy.]

2. Copyrights ⊂⇒53—Taking part of a work does not avoid infringement.
    Under Copyright Act 1909, § 3 (Comp. St. § 9519), which provides that a copyright shall protect all the copyrightable component parts of the work copyrighted, and shall give to the proprietor of a copyright on composite works all the rights in respect thereto which he would have if each part were individually copyrighted, the taking of a part of a work only does not avoid infringement.

3. Copyrights ⊂⇒53—Copying is not confined to literary repetition.
    Copying is not confined to a literary repetition, and infringement of a copyright is not avoided by taking the substance or idea and producing it, through a different medium and picturing in shape and details in sufficient limitation to make it a true copy of the character thought of by the originator of the copyrighted work.

4. Copyrights ⊂⇒1—Concept of the originator is the thing protected.
    The concept of beauty expressed in the materials of statuary or drawing is the thing which is copyrighted, and the Copyright Act was intended to prohibit the taking of this conception.

5. Copyrights ⊂⇒67—Copyright of cartoons held infringed by doll made in imitation of picture in cartoons.
    A copyright of a book of cartoons picturing "Barney Google and Spark Plug," or "Sparky," held infringed by a doll, named "Sparky" and made in exact imitation of the picture of the horse, "Spark Plug" in the cartoons.

---

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the King Features Syndicate against Rudolph Fleischer and Michael Baumgarten, partners as the Fleischer Toy Manufacturing Company, and the Fleischer Toy Manufacturing Company, Inc. Decree for defendants, and complainant appeals. Reversed.

William A. De Ford, of New York City (John T. Sturdevant, of New York City, of counsel), for appellant.

Joseph A. McLaughlin, of New York City (Rex Frye, of Detroit, Mich., of counsel), for appellees.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. Appellant, the owner of the copyright of a book of cartoons known as "Barney Google and Spark Plug," sues the appellees, who are manufacturers of toys, and who manufacture a toy horse which they have fashioned after, labeled, and sold as "Spark Plug" and "Sparky." The appellant has been and is engaged, among other things, in selling, publishing, and syndicating to the publishers of newspapers, cartoons and comic strips, which are in turn published under a license from appellant. These newspapers have a wide and large reading public, and the cartoons and comic strips have great value to the publishers. The appellant's employee prepared cartoons—that is, sketches and drawings—in series of representations of a male character known as "Barney Google," which depicts a character in a variety of ludicrous situations coupled with descriptive reading matter or dialogue. From July, 1922, these cartoons appeared almost daily, and included a characteristic representation of a new grotesque and comic race horse called "Spark Plug," sometimes referred to as "Sparky." Both figures, the man and the horse, are found to be the creation of the appellant's employee. By a contract of employment, the appellant has had the exclusive rights of this employee's productions, including the right to copyright in its own name, vend, sell, and reproduce such productions. On July 7, 1922, it copyrighted and published a book delivered to it by this employee containing the cartoons and comic strips as originated and published. The book was sold extensively, and therefore gave wide publicity to and familiarized the subject of "Barney Google" and the horse "Spark Plug" to millions of readers.

The appellees' infringement consisted of the reproduction of a substantial portion of the copyright, and also in publishing it as an advertisement in the trade paper entitled "Plaything" and in the newspaper called "Billboard." The principal act of infringement, however, is the manufacturing and sale of a grotesque figure or toy, an exact reproduction of the horse "Spark Plug," or "Sparky," as copyrighted by the appellant. The appellees are the licensees under a design patent application for a stuffed doll filed February 9, 1923, the design of which duplicates the horse "Spark Plug," or "Sparky." The appellant moved for a preliminary injunction pending the trial of the suit, and the appellees moved to dismiss the complaint. The court below denied the motion for an injunction, and granted the motion to dismiss. The appeal is from the order entered thereon.

The record satisfactorily demonstrates that the appellant's employee had the original conception of the idea of the concept of humor embodied in the original cartoons, which consisted of a male character, "Barney Google," and the weather-beaten horse, called "Spark Plug." The first publication of the cartoons was in July, 1922, whereas the applicant of the design patent in her affidavit said she made her first horse doll in August, 1922. Indeed, her affidavit indicates that her "perfected horse doll," like "Spark Plug," was not made until six months after appellant's cartoon was published and copyrighted. In view of the admissions made by the appellees' licensor, she is not the original inventor of the idea of the design of "Spark Plug," or "Sparky."

[1] The question presented to us is whether manufacturing and duplicating the horse as a figure doll is a copy of the copyrighted idea of the appellant's. The Copyright Act (Comp. St. § 9517) provides that any person, having complied with the provisions of the act, shall have exclusive right "to print, reprint, publish, copy, and vend the copyrighted work." A copy is that which ordinary observation would cause to be recognized as having been taken from or the reproduction of another. In White-Smith Co. v. Apollo Co., 209 U. S. 17, 28 Sup. Ct. 323, 52 L. Ed. 655, 14 Ann. Cas. 628, the court said:

"What is meant by a copy? We have already referred to the common understanding of it as a reproduction or duplication of a thing. A definition was given by Bailey, J., in West v. Francis, 5 B. & A. 743, quoted with approval in Boosey v. Whight, 80 L. T. R. 561. He said: 'A copy is that which comes so near to the original as to give to every person seeing it the idea created by the original.'"

[2, 3] Section 3 of the Copyright Act of March 4, 1909 (35 Stat. 1075 [Comp. St. § 9519]), provides protection for all the copyrightable component parts of the thing copyrighted, and the proprietor has all the rights in respect thereto which he would have, if each part were individually copyrighted under the act. The courts have given this meaning to this section. Da Prato Statuary Co. v. Guiliani Co. (C. C.) 189 Fed. 90; Mail & Express Co. v. Life Pub. Co., 192 Fed. 899, 113 C. C. A. 377. Copying is not confined to a literary repetition, but includes various modes in which the matter of any publication may be adopted, imitated, or transferred with more or less colorable alteration. The disguise of the source from which the material was derived does not defeat the protection of the copyright, nor does taking a part of the work constitute an evasion of the copyright. Lawrence v. Dana, Fed. Cas. No. 8, 136, 4 Cliff. 80. The appellees did not take all of the copyrighted matter, or all its principal characters, but took one, the idea of the horse "Sparky."

We do not think it avoids the infringement of the copyright to take the substance or idea, and produce it through a different medium, and picturing in shape and details in sufficient imitation to make it a true copy of the character thought of by the appellant's employee. Doing this is omitting the work of the artisan, but appropriating the genius of the artist. Falk v. Howell & Co. (C. C.) 37 Fed. 202. In the cited case, the court said:

"That their design is copied directly from the copyrighted photograph is not denied, but it is urged that infringement is avoided, because it is larger than the photograph, and is stamped on leather, and is intended for the bottom or back of a chair. It is thought that this proposition cannot be maintained. Differences which relate merely to size and material are not important. * * * "

There the photograph was a work of art, and the chair that of manufacture. A piece of statuary may be infringed by the picture of the statuary for the Copyright Act secured to the author the original and natural rights, and it is the intendment of the law of copyrights that they shall have a liberal construction in order to give effect to what may be considered as an inherent right of the author in his work.

"The question is not whether the photograph contains artistic elements of its own but whether it also contains any of the artistic ideas and conceptions expressed in the statuary." Bracken v. Rosenthal (C. C.) 151 Fed. 136.

[4] The statuary, made of materials, expressed the sculptor's concept of beauty, and the picture expresses the artist's concept of beauty. The concept of beauty expressed in the materials of statuary or drawing, is the thing which is copyrighted. That is what the infringer copies. The Copyright Act was intended to prohibit the taking of this conception. The Copyright Act protects the conception of humor which a cartoonist may produce, as well as the conception of genius which an artist or sculptor may use. Hill v. Whalen (D. C.) 220 Fed. 359.

In the Hill Case, the complainant was the licensee of cartoon characters known as "Mutt and Jeff." The defendants produced a dramatic performance calling it "In Cartoonland." The characters were costumed exactly like the figures of "Mutt and Jeff," the cartoons, and their actions and speech were in harmony with the spirit of the cartoons. The court enjoined the defendants, upon the ground that representations of "Mutt and Jeff" dramatically was calculated to injuriously affect the copyright of the cartoons. A reproduction in materials of the copyrighted cartoon character, it would seem, is equally a violation of the copyright of the cartoon. Empire Amusement Co. v. Wilton (C. C.) 134 Fed. 132. These conclusions are supported by the English authorities. Bradbury, Agney & Co. v. Day, 32 T. L. R 1916, 349; Turner v. Robinson, 10 Ir. Ch. 121, 510.

The protection accorded the owner of the copyright is of the intellectual product of the author. It is intended to protect any species of publication which the author selects to embody his literary product. Holmes v. Hurst, 174 U. S. 82, 19 Sup. Ct. 606, 43 L. Ed. 904. The question is: To what is the artist or author entitled as his conception and what if such original conception has been appropriated? He is entitled to any lawful use of his property whereby he may get a profit out of it. Falk v. Donaldson (C. C.) 57 Fed. 32. It is the commercial value of his property that he is protected for, to encourage the arts by securing to him the monopoly in the sale of the object of the attraction. Gambart v. Ball, 14 C. B. (N. S.) 306. In Baker v. Selden, 101 U. S. 99, 25 L. Ed. 841 there was a copyrighted description of a system of bookkeeping contained in a book annexed to a certain form

for blanks, consisting of ruled lines and headings in illustration of a descriptive text. The court held that the copyright gave no exclusive right to the manufacture and sale of blank account books provided for use in conformity with the system described, and said:

"Of course, these observations are not intended to apply to ornamental designs or pictorial illustrations addressed to the taste. Of these it may be said that their form is their essence, and their object the production of pleasure in their contemplation. This is their final end. They are as much the product of genius and the result of composition, as are the lines of the poet or the historian's periods. On the other hand, the teachings of science and the rules and methods of useful art have their final end in application and use; and this application and use are what the public derive from the publication of a book which teaches them. But, as embodied and taught in a literary composition or book, their essence consists only in their statement."

The form of the horse, embodying the aspect of humor, was the essence of the cartoon; its end, within the artist's purpose, and its object, the production of amusement in contemplation. We think the copyright law was intended to give protection to the creation of that form, protection to its value in that form, to give amusement in contemplation. We are referred to Royal Sales Co. v. Gaynor et al., 164 Fed. 207, a case in the trial court, where the defendant copyrighted a booklet describing a monogram used on a campaign badge, which was sold pinned to the booklet. The defendant assigned the copyrighted booklet to the complainant. After the assignment, the defendant copyrighted another booklet and sold it with the badge or the monogram sold with the first copyrighted booklet. In refusing an injunction, it was held that the monogram was not a cut, print, or engraving, the only words of the copyright law appropriate to it, because it was not a pictorial illustration "connected with the fine arts," as defined by the Act of June 18, 1874, § 3 (18 Stat. 79). The force of this decision was very much impaired by reason of our recent decision in Jeweler's Circular Pub. Co. v. Keystone Pub. Co., 281 Fed. 83, 26 A. L. R. 571, where it was pointed out that the Gaynor Case, in holding that the monogram was not a cut, print, or engraving, "because it was not a pictorial illustration 'connected with the fine arts,'" may be difficult to reconcile with the decision in Bleistein v. Donaldson, 188 U. S. 239, 23 Sup. Ct. 298, 47 L. Ed. 460.

We are also referred to Horsman v. Squires (C. C. A.) 286 Fed. 372, where the plaintiff's predecessor made a bust of plaster of the head and shoulders of an infant, declared it a work of art of which copies were not to be reproduced for sale, and registered a photograph of the bust in the Copyright Office under section 11 of the act, receiving a certificate of registration. He then proceeded to reproduce it and sell it in various shapes and sizes. Of these latter reproductions, he omitted notice of copyright, which the act required, and which the courts held to be essential to protection. The alleged infringer moved to dismiss the bill, and the motion was granted. Thereupon the plaintiff filed two copies of the original, and procured a certificate of registration, and sought to enjoin another alleged infringer from copying. This court affirmed the denial of an application for a preliminary injunction made on affidavits as indicating an exercise of discretion in the District Court where several debatable questions were presented.

[5] Here the book was copyrightable, and embodied the pictorial illustration of the horse "Sparky." The artist's concept of humor was embodied in the copyrightable form, was addressed to the contemplation of the observer and the reader; its essence was the concept of humor which that form embodied. We think it cannot be copied, by manufacturing a toy or doll as the appellees did, without taking the copyrightable form of that concept, and without at the same time taking the commercial value— the fruits of the cartoonist's genius which consisted in his capacity to entertain and amuse.

Decree reversed.

⬦⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes