**BURNDY ENGINEERING CO., Inc., v. SHELDON SERVICE CORPORATION et al.**

**No. 254.**

Circuit Court of Appeals, Second Circuit.

April 29, 1942.

Davies, Auerbach, Cornell & Hardy, of New York City (William J. Carr and Archibald A. Patterson, both of New York City, of counsel), for defendants-appellants.

Leo J. Linder and Leo Magill Goodman, both of New York City (Leo J. Linder and Harry Ernest Rubens, both of New York City, of counsel), for appellee.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

PER CURIAM.

The plaintiff is a manufacturer of electrical connectors and sells its products primarily by catalogues which it distributes gratis to its customers and prospective customers. They contain technical engineering data and over 11,000 tabulations,

calculations and drawings created and published at an expense to it of more than $50,000. Such catalogues present to designing engineers and construction superintendents well arranged information so that they may select the electrical connectors required for their jobs. Without such catalogues it would be necessary for each of the designing engineers individually to do the designing and to have the connectors made up for them. The customers of the connector manufacturers are public utility companies, governmental agencies such as T. V. A., the Army and Navy, Boulder Dam, and municipalities having electric light plants and certain large industrial plants. The plaintiff has sold connectors to the trade which were manufactured for it on a contract basis.

The defendant Sheldon was for many years a salesman in the employ of the plaintiff. He left its employment in 1938, organized the Sheldon Service Corporation and started to compete with the plaintiff. In July, 1938, his corporation began to prepare a catalogue which it started to distribute in the autumn of 1938. This catalogue infringed three of plaintiff's copyrights—a fact conceded by the defendants in a consent decree adjudging infringement, which was entered against them on November 14, 1939. In the hope of avoiding charges of infringement defendants thereafter put out a second catalogue which nevertheless infringed all three copyrights. This second catalogue went to three separate printings, all of which somewhat differed both from one another and from the first catalogue issued and all of which infringed plaintiff's three copyrights. Defendants also printed 500 copies of a separate revised page C-16 of the second catalogue which infringed plaintiff's copyrights.

The district court awarded statutory damages as follows: $250 for the infringement of each of plaintiff's copyrights by defendants' first catalogue, or the aggregate amount of $750; $250 for the infringement of each of these copyrights by the three separate issues of the second catalogue, or the aggregate amount of $2,250; $500 for the infringement of plaintiff's copyrighted work by defendants' revised page C-16. The decree confirmed the report of Stuart F. Steinbrink as special master and gave a judgment in favor of the plaintiff for the foregoing statutory damages to the total of $3500.

■ The defendants' contention that this is a case of a repetition of identical infringing matter and, therefore, there were but three infringements in all, for which damages should be awarded is unfounded. L. A. Westermann Co. v. Dispatch Co., 249 U.S. 100, 39 S.Ct. 194, 63 L.Ed. 499, Cory v. Physical Culture Hotel, 2 Cir., 88 F.2d 411. The various issues of the catalogues were all found to be not identical but different and were found to contain infringing matter taken from the plaintiff's copyrights.

■ Inasmuch as the master estimated defendants' profits on sales at $1,194.60 they insist that the award should not exceed this sum. But the master recommended, and the court awarded, statutory damages because there was not sufficient basis for estimating either the profits which defendants derived from the pirating of plaintiff's copyrighted catalogue or the plaintiff's damages.

The profits which the master found were made by defendants though certain sales were obviously not all the profits they realized. These particular profits were found to have been $1,194.60 but the defendants made other sales of merchandise described in infringing pages of the catalogues in the amount of $7,775 from which it is claimed they derived a profit of $4,300. This profit the master did not find to have been derived from the use of the infringing catalogues because the customers who purchased the $7,775 worth of goods did not place their orders by catalogue numbers, though the defendants sent invoices bearing such numbers. We need not say whether so strict a rule should have been adopted in computing loss of profits, in view of the fact that the customers possessed the infringing catalogues at the time they ordered the goods. It is enough that the defendants were diverting the plaintiff's trade and impairing its good-will by a competing business that was being built up through the use of the infringing catalogues and that at the same time they were making profits on sales of some goods ordered from catalogue numbers. The profits accruing to the defendants were not precisely ascertainable in dollars and cents and there was no proof of the amount of the plaintiff's damages which arose from the diversion of its business and a loss of its good-will. But, as the Supreme Court said in L. A. Westermann Co. v. Dispatch Co., 249 U.S. 100, 103, 39 S.Ct. 194, 195,.

63 L.Ed. 499: " 'The plaintiff's damages rested in the injury to his * * * contract, and in the discouragement of and the tendency to destroy his system of business. To make any accurate proof of actual damages was obviously impossible.' Whether the defendant made any profit from the publications does not appear." In the case at bar, as under the Westermann decision, an award of statutory damages was the proper course to adopt where the accurate proof of either profits or damages was impossible. The use of the infringing catalogues built up defendants' good-will and impaired plaintiff's to an incommensurable extent not reflected in current profits.

The minimum award of $250 statutory damages for each infringement of the plaintiff's three copyrights by the issue and distribution of defendants' Catalogue No. 1 and by the three different editions of its Catalogue No. 2 was, therefore, proper. The award of $500 for infringement because of the issue of defendants' revised page C-16 was also justified. It amounted to $1 for each page issued and was within the range of from $250 to $5,000 provided by Section 25(b) of the Copyright Act, 17 U.S.C.A. § 25(b).[1]

We have considered defendants' objections to the amount (namely, $2,000) allowed the plaintiff for counsel fees as well as the contention that plaintiff should bear one-half of the master's compensation because it improperly prolonged the litigation. In view of the defendants' series of infringements which rendered the issues to be tried multifarious both as to law and facts, the counsel fee cannot be regarded as excessive. The amount was within the discretion of the court and the discretion was fairly exercised. We likewise find no merit in the claim that the suit was unnecessarily prolonged by the plaintiff.

Judgment and order affirmed.

---

[1] Section 25 (b) of the Act so far as pertinent is as follows:

"If any person shall infringe the copyright in any work protected under the copyright laws of the United States such person shall be liable:

\* \* \* \* \* \*

"(b) To pay to the copyright proprietor such damages as the copyright proprietor may have suffered due to the infringement, as well as all the profits which the infringer shall have made from such infringement, and in proving profits the plaintiff shall be required to prove sales only and the defendant shall be required to prove every element of cost which he claims, or in lieu of actual damages and profits such damages as to the court shall appear to be just, and in assessing such damages the court may, in its discretion, allow the amounts as hereinafter stated, but in case of a newspaper reproduction of a copyrighted photograph such damages shall not exceed the sum of $200 nor be less than the sum of $50, and in the case of the infringement of an undramatized or nondramatic work by means of motion pictures, where the infringer shall show that he was not aware that he was infringing, and that such infringement could not have been reasonably foreseen, such damages shall not exceed the sum of $100; and in the case of an infringement of a copyrighted dramatic or dramatico-musical work by a maker of motion pictures and his agencies for distribution thereof to exhibitors, where such infringer shows that he was not aware that he was infringing a copyrighted work, and that such infringements could not reasonably have been foreseen, the entire sum of such damages recoverable by the copyright proprietor from such infringing maker and his agencies for the distribution to exhibitors of such infringing motion picture shall not exceed the sum of $5,000 nor be less than $250, and such damages shall in no other case exceed the sum of $5,000 nor be less than the sum of $250, and shall not be regarded as a penalty. \* \* \*

"Second. In the case of any work enumerated in section 5 of this title, except a painting, statue, or sculpture, $1 for every infringing copy made or sold by or found in the possession of the infringer or his agents or employees; \* \* \*."