## STONESIFER v. TWENTIETH CENTURY-FOX FILM CORPORATION et al.

Civ. No. 1575.

District Court, S. D. California, C. D.

Dec. 30, 1942.

Arthur V. Kaufman, of Los Angeles, Cal., for plaintiff.

Alfred Wright and Gordon Hall, Jr., both of Los Angeles, Cal., for defendants.

J. F. T. O'CONNOR, District Judge.

This is an action by Myrtle Louise Stonesifer, also known as Louise Howard, a resident of the State of California, against the defendant, Twentieth Century-Fox Film Corporation, et al., a foreign corporation, for alleged infringement of a copyright. The plaintiff alleges she originated, devised and created a certain dramatic composition under the title, "Women's Hotel"; that the said dramatic composition has been in manuscript form and unpublished; and that the same has been duly copyrighted.

Plaintiff further alleges that the defendant corporation produced and released a motion picture play under the title, "Hotel for Women", which contains a substantial reproduction of her title, plot, idea, dramatic situations, and characters of her play, and are advertising that the same is adapted from a story by Elsa Maxwell and Kathryn Scola without her consent, and in violation of her copyright. The defendant denies generally and specifically the allegations of the complaint, and alleges that the photoplay, "Hotel for Women", is wholly original and is its sole and exclusive property.

It is necessary to summarize briefly the story as found in the play, and the story as exhibited in the film, in order to determine whether or not there has been a violation of the plaintiff's rights.

---

The plaintiff's play, "Women's Hotel", consists of three acts and four scenes. Act I is laid in the lobby of a New York hotel. The principal character is Margaret Ross, a small-town girl, who arrives in New York to study. Other characters are Irene, who plays second lead, a good-hearted, outspoken girl, a little shop-worn; Anna Kutner, a model; Lillian Forbes, retiring, self-sacrificing and saving in order to aid her boy friend; Sue, who leans toward the women's slack attire; Joe Braley, attractive to women and with few, if any, morals.

The play is built around Margaret Ross, whose father accompanies her when she checks in at the "Women's Hotel", and he draws a map for her showing the location of the hotel and streets and gives her the customary parental advice. Margaret makes friends among the patrons of the hotel where numerous types of women, young and old, are living. Through one of the girls she meets Joe Braley, man-about-town, whose persuasiveness causes her to forget the advice of her father. Margaret's beauty, simplicity, and inexperience appeal to the worldly Joe, and he promptly makes overtures to her, even suggesting marriage. He convinces her it is not improper for her to visit his apartment. In the apartment she again reminds him of his suggestion of marriage. The telephone rings and on the other end of the wire is the woman with whom he shares his apartment. Joe assures her over the telephone that "it will all be arranged in due time but not tonight". His tone arouses Margaret's suspicions but experience of other years comes to Joe's rescue and he is able to allay her fears. Words of love pass between them. The woman to whom he has spoken on the telephone, guided by her intuition if not her experiences, is not to be put off, and she arrives at the apartment fully armed, surveys the field like a huntress stalking her prey, walks into the bedroom and, aiming in the general direction of Joe and Margaret, discharges a bullet which lodges in Margaret's shoulder. Margaret returns to her hotel. Her parents arrive and before they see her, the woman-manager, one of the type who gets some measure of enjoyment out of attempting to drag others down to her own level, engages in conversation with them and blackens Margaret's character. Her father is stern, but her mother is more considerate. She goes to her room when he orders her to get her belongings, but leaves the impression that she will not return.

In the motion picture, "Hotel for Women", which plaintiff claims plagiarized her play, the principal character, Marcia Bromley, is a small-town girl, who arrives in New York and registers at the "Hotel for Women". A map is shown on the screen of the location of the hotel. Other characters are: Eileen, who plays second lead, a frank, open girl who has missed very little in life; Nancy Prescott, a self-sacrificing girl, who denies herself in order that the young man whom she loves may get ahead; Joyce Compton, who has had little worldly experience and is bashful. The picture has a model and other characters usually found about a hotel. John Craig, successful business man, does not permit his business to interfere with his appreciation of lovely women. Jeff Buchanan, little-town fiance of Marcia, has allowed ambition to weaken his affection for her. A woman who imitates the dress of men is another character.

The play, in the motion picture, is built around Marcia. She goes to the telephone in the hotel lobby and calls her fiance, Jeff, who is surprised and confused and not anxious to see her. She is discouraged and desires to return home, but one of her new girl friends persuades her to visit a night-spot, and friends in the hotel make an extra effort and provide her with gorgeous apparel for the occasion. Jeff is present at the night-spot with one of the social registrants. Marcia is attractive, intelligent, and vivacious. At the suggestion of one of her girl friends she becomes interested in modeling, meets a theatrical agent, and overnight finds herself pictured on many of the large billboards advertising the delight and comfort following a few puffs from a cigarette. She is admired, photographed, and dated, and Jeff is disturbed over her popularity with other men. Among her admirers is his wealthy employer, Mr. Craig, leading architect of the city, whose appreciation of artistic lines is not confined to the cold contour of buildings. He becomes very much enamoured of Marcia, but has some prior commitments with a lovely model by the name of Barbara. He invites Marcia to his modernistic apartment where the extravagance of his imagination had full range in a display of grandeur. The quiet of the evening is disturbed by a telephone call from Barbara, and Craig endeavors to placate her by saying he is in conference, but she is not as easily erased as an error on a blueprint, and she comes

to the apartment and, with the swiftness and accuracy of a Pavlichenko, she lodges a bullet in Craig's shoulder, which proved more effective than her jealousy expressed in words. Marcia calls a doctor. Inspectors enter and Marcia is accused. Jeff arrives and takes the blame; Craig's doctor arrives and Barbara is implicated. Craig ends the confusion by saying it was just a mistake. Marcia and Jeff are reunited and return to the hotel together, leaving there with her luggage and cupid.

Plaintiff's play, "Women's Hotel", was duly copyrighted in March 1935. The title of defendant's film was "Hotel for Women". The principal character in both play and film is a young girl from a small town who comes to New York: one with the intention of marrying her fiance, and the other to study designing. Aside from the objectives of the girls, the characters are the same. Both become involved with older men; both of these men have other sweethearts. Both girls climax their careers in New York in the respective apartments of these men. In both instances a jealous woman enters the apartment and, in the one instance shoots the man involved in his shoulder and in the other shoots the woman in the shoulder.

The play and the film have striking similarity in the hotel settings. In both instances the location of the hotel is fixed by a map; the entrance of both country girls into the lobby to register shows them waiting for a room; and while waiting, Margaret in the play and Marcia in the film both declare they do not smoke. In the play Margaret is advised of the ways of New York, and in the film Marcia is instructed in the ways of New York. In some instances the language is strikingly similar. For example, in the lobby Margaret says, "Isn't she stunning", and in the film, Marcia says, "Whew, she's stunning!", both girls referring to a model. The arrangement of the bedrooms in the play and in the film is strikingly similar— the rooms in both are in disarray; one of the girls is ironing with an electric iron and all are in negligee in both play and film. In play and film one girl tells the others she is going out with a producer, and has a part in a play. Each girl has her attention called to the various characters in the hotel; each is influenced by other girls in the hotel, and in some instances the dialogue is similar. Blind dates are arranged for in both, and one girl is advised she may wear the clothing of another girl. A similar scene occurs in both in fixing the girl's hair. In the play, Margaret refers to Joe Braley as "one of the nicest men I have ever met" and in the picture Marcia refers to Craig as "the most charming, intelligent, entertaining man". In the play, Margaret is warned about Joe Braley by Irene, who says, "You are rather young and you have your parents, why get mixed up so soon?" And in the film Barbara warns Marcia about Craig, saying "You're very young and you've been very successful with all these men. You've come along very fast, but you'll be smart if you leave this one alone." In the play one girl refers to the failure of her boy friend to marry her—in the film one girl says her boy friend has never spoken of marriage. In each advice is given to the girls on how to get their boy friends to propose. In the play one girl advises another that they might as well have their meals bought for them. In the picture, Eileen tells the girls that no girl in New York should pay for her own dinner. In the play, Anna, the model, informs the girls she expects to become the model for a cigarette ad and, while telling them about it, she is informed over the telephone that the contract is ready for her signature. In the picture, Marcia is talking of her experiences in becoming a model when the telephone rings and she is informed she has been selected as the model for the cigarette ad. In both film and play the conversation is mostly about men, dates, morals and the best method of gaining the end each has in view. There are several incidents in the play such as ironing in hotel rooms, and dogs on leash parading through the lobby which, according to the testimony, is not permitted in the kind of hotel described, but which incidents are found also in the film. Both play and film have the usual "catty" women sitting around the lobby, envious of their younger and more attractive sisters. They appear to delight in making half-veiled suggestions as to the source and price paid for the furs and costumes of some of the girls—they are like faded roses, bent by the frost of autumn, their fragrance gone, the beauteous color of the leaf which attracted the eye, turned yellow, and, in the young girls they see the happiness and beauty of spring, but in their own lives find poor consolation in the embrace of winter.

The characterization of men by girls in both play and film is about the same. In the play, Irene pays tribute to the male of the species saying: "they are all out for what they can get and then they are through". In the film, Eileen says: "Dogs, they are still dogs, all of them."

In the play Irene is worried about looking thinner in the face, and in the film Joan is worried about the freshness going from her face and leaving her peaked looking. In the play, Irene uses the expression: "and that's that", and in the film Eileen uses the same expression.

All of this leads the court to the conclusion that there was infringement. There was no evidence of any similar story having been published or film exhibited dealing with similar characters or plot—in both play and film many girls of varying moral standards and with quite different philosophy of life are living in the hotel. It is true, a hotel for women is, after all, a hotel for women, and while there is nothing very novel about the characterization of these different girls and elderly women, from these rather everyday characters an original play has been written with plot and dramatic climaxes which is the product of the author's mind and is the property of the author, and is protected by the copyright statute when the statute has been complied with as in this instance. The striking similarities and series of coincidences, and in many instances the very language, cannot honestly be said to be mere chance, but must have been the result of copying. A film has much greater latitude than a play in presenting the same characters, theme and plot. The film has the advantage of outdoor shots showing busy thoroughfares, electric lights, cafe life, trains and automobiles in motion, all of which is denied the stage—however, the fact that a play has been elaborated upon with these advantages does not relieve the film from the charge of plagiarism if the story or the theme, central idea or plot, treatment and development are so similar that one, seeing or reading the play, and seeing the film, would at once recognize that it had been taken from the play or the book. The test is: What would be the conclusion of the ordinary observer? It is not a matter of cold analysis, but rather impressions of similarity or actual copying. The tests to be applied have been set forth in several opinions which this court re-

viewed in Re De Montijo v. 20th Century Fox Film Corp. et al, D. C., 40 F. Supp. 133. The leading authorities are set forth in that opinion.

Plaintiff operated a theatre in 1937 in New York for the purpose of presenting her original plays and plays of other playwrights. These performances were invitational affairs. The theatre was known as the Villa Venice at 14 East 60th Street, New York City. Her company was known as the Louise Howard players. Plaintiff produced her play, "Women's Hotel" in July, 1937, and Mr. Frank Underwood, defendant's representative in its story department in Radio City, New York, was present at this performance, and advised plaintiff that he liked the play and requested her to submit a script to him for presentation to the defendant. About a week later plaintiff forwarded copy of script of play, "Women's Hotel", to Mr. Underwood. Inquiring three or four weeks later of Mr. Underwood, the plaintiff was advised by him that the script was on the coast. About three weeks thereafter, the plaintiff sent her stage manager, Mr. Lord, to Mr. Underwood's office, and the script was returned. In the latter part of 1939, defendant produced, exhibited and distributed a motion picture called "Hotel for Women" by Elsa Maxwell.

There is no question raised concerning the authority of Frank Underwood to receive and submit plays or stories to the defendant as its representative in New York. Mr. Moskovitz was Mr. Underwood's superior officer, head of the story department in New York. Darryl F. Zanuck, Vice President in Charge of Production for the defendant since its organization and up to the time of the trial, selected the story material suitable for motion pictures, and purchased or rejected submitted story material, as well as to assign writers and associate producers to productions and to supervise casting and the making and editing of the films. Mr. Zanuck testified that the idea of producing the film, "Hotel for Women", came as a suggestion from Eddie Silverman, President of the S. & A. Film Distributors in Chicago in the summer of 1938 when Mr. Zanuck was visiting him. This suggestion, no doubt, aroused the interest in such a story and film in the mind of Mr. Zanuck. Returning to Los Angeles, he commissioned one of his regular writers to go to New York; stay at the Barbizon Hotel for the purpose of writing such a

200

story. This writer testified she did go to New York and while there had dinner on several occasions with Mr. Moskovitz, head of the story department for defendant corporation, and that she discussed her mission to New York with him, but she denied she discussed the plot of the play, "Women's Hotel", or the picture, "Hotel for Women", with him, and further testified the story was original with her; that no part was written in New York but that she merely secured background there and returned to the studio in Los Angeles without any definite story in mind, and that she had not seen or read the plaintiff's play.

The Associate Producer of the play, "Hotel for Women", testified that the idea for the story came to him from a friend, Virginia Daley. The writer who secured background in New York discussed the subject with Miss Daley in New York. The evidence on the part of the defendant is not very clear as to who wrote various parts of the scenario.

The Court, the parties to the action, and the attorneys had the advantage of seeing the film, "Hotel for Women", exhibited and the Court is of the opinion that the plaintiff has established infringement by the defendant by copying a substantial and material part of her copyrighted play, "Women's Hotel". An ordinary observer who had read or seen the plaintiff's play would recognize the infringement in the film produced, distributed and exhibited by defendants. King Features Syndicate v. Fleischer, 2 Cir., 299 F. 533.

The testimony showed that the approximate cost of producing the film was as follows:

| | |
|---|---|
| Negative cost | $510,300 |
| Positive prints, | 134,200 |
| Distribution, | 197,900 |

The total film rentals were $862,200, leaving a net profit of $19,800. The Court finds and assesses damages in favor of plaintiff and against defendant for infringement at $3,960 together with costs. Sheldon v. Metro-Goldwyn Pictures Corp., 2 Cir., 106 F.2d 45; Id., 309 U.S. 390, 60 S.Ct. 681, 84 L.Ed. 825.

Under Sec. 40 of the Copyright Act, reasonable counsel fees may be allowed. In addition to the award of $3,960 attorney fees will be allowed in the sum of $1,000. Under 17 U.S.C.A. § 40 the Court

in copyright infringement suit "may" award reasonable attorney fees, which award is "discretionary". Buck v. Bilkie, 9 Cir., 1933, 63 F.2d 447; Burndy Engineering Co. v. Sheldon Service Corporation, 2 Cir., 127 F.2d 661; 17 U.S.C.A. § 40; Sammons v. Colonial Press, Inc., 1 Cir., 126 F.2d 341. Also see cases cited in De Montijo v. 20th Century Fox Film Corp., supra.

While the litigation in Buck v. Bilkie, supra, was concerned with enjoining the violation of a musical composition, under 17 U.S.C.A. § 25(b), Sec. 40 of Title 17 governed the Court's disposition of the item of attorney fees.

Plaintiff will prepare findings of fact and conclusions of law, and judgment will be entered in accordance with this opinion.