**STEIN et al. v. MAZER et al.**

No. 6572.

United States Court of Appeals
Fourth Circuit.

Argued April 17, 1953.

Decided May 19, 1953.

1. Mills v. Hunter, 10 Cir., 204 F.2d 468.

George E. Frost, Chicago, Ill. (Joseph T. Brennan, 2d, Baltimore, Md., and Will Freeman, Chicago, Ill., on brief), for appellants.

Max R. Kraus, Chicago, Ill., for appellees.

Warren E. Burger, Asst. Atty. Gen., Paul A. Sweeney and Benjamin Forman, Attorneys, Department of Justice, and George D. Cary, United States Copyright Office, Washington, D. C., on brief for the Register of Copyrights as *amicus curiæ*.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Plaintiffs instituted a civil action against defendants in the United States District Court for the District of Maryland, seeking an injunction and damages for the alleged infringement of six copyrights for small three-dimensional statuettes of male and female dancing figures made of semi-vitreous china. Registration of these statuettes was duly granted to the plaintiffs by the Copyright Office. The District Court dismissed the complaint of plaintiffs, who have appealed to us. The decision of the District Court appears to be virtually a holding that a work of art which may be, and is, utilized for some practical purpose, may be protected only by a design patent and not by copyright. No question of unfair competition is here involved, only the validity of the copyrights is in issue. We think the District Court erred in holding the copyrights invalid. The judgment below must, accordingly, be reversed. The Register of Copyrights was permitted to file with us a brief as *amicus curiae*.

The works of plaintiffs here involved were executed by preparing original sketches, sculpturing the resulting figures in clay on a clay armature, and then preparing a mold from the clay sculpture for casting copies. The specimens submitted to the Copyright Office were in statue form. We think these statues may fairly be classified as "works of art."

Plaintiffs are in the business primarily, almost exclusively, of making and selling these statues in lamp form, though a few,

474

very few, of the copyrighted statues have been sold as statues. The copyrighted figures have been sold by defendants as parts of complete lamps, of which they form the base portion. Beyond any dispute, defendants have meticulously and in minute detail copied every element of the copyrighted statues of the plaintiffs.

It is highly important, at the outset, to distinguish between a design patent and a copyright. Although similar in some respects, the two disclose significant differences. Of particular importance here are the requirements for their issuance and registration and the extent of the protection they afford. A design patent may be obtained only for a "new, original and ornamental design for an article of manufacture". 35 U.S.C.A. § 171. To be valid, therefore, a patent "must disclose a high degree of uniqueness, ingenuity and inventiveness". Alfred Bell & Co. Ltd. v. Catalda Fine Arts, Inc., 2 Cir., 191 F.2d 99, 100. A copyright, on the other hand, may be registered if the particular work is "original," i. e., if it owes its origin to the "author." Burrow-Giles Lithographic Co. v. Sarony, 111 U.S. 53, 57–58, 4 S.Ct. 279, 28 L.Ed. 349. It is "valid without regard to the novelty or want of novelty of its subject matter." Baker v. Selden, 101 U.S. 99, 102, 25 L.Ed. 841.

Because the standards for obtaining copyright protection are of a lower order than those required for design patents, the protection granted under a copyright is more limited. Since a copyright is intended to protect authorship, the essence of copyright protection is the protection of originality rather than novelty or invention. Bleistein v. Donaldson Lithographing Co., 188 U.S. 239, 249–250, 23 S.Ct. 298, 47 L.Ed. 460; Baker v. Selden, 101 U.S. 99, 102–104, 25 L.Ed. 841. Said Circuit Judge Frank in Alfred Bell & Co. Ltd. v. Catalda Fine Arts, Inc., 2 Cir., 191 F.2d 99, 103:

"* * * 'independent reproduction of a copyrighted * * * work is not infringement', whereas it is vis a vis a patent. Correlative with the greater immunity of a patentee is the doctrine of anticipation which does not apply to copyrights: The alleged inventor is chargeable with full knowledge of all the prior art, although in fact he may be utterly ignorant of it. The 'author' is entitled to a copyright if he independently contrived a work completely identical with what went before; similarly, although he obtains a valid copyright, he has no right to prevent another from publishing a work identical with his, if not copied from his. A patentee, unlike a copyrightee, must not merely produce something 'original'; he must also be 'the first inventor or discoverer.' 'Hence it is possible to have a plurality of valid copyrights directed to closely identical or even identical works. Moreover, none of them, if independently arrived at without copying, will constitute an infringement of the copyright of the others.' "

More tersely put, "a copyright on a work of art does not protect a subject, but only the treatment of a subject." F. W. Woolworth Co. v. Contemporary Arts, 1 Cir., 193 F.2d 162, 164, affirmed 344 U.S. 228, 73 S. Ct. 222. See, also, Copinger, "The Law of Copyrights" (7th Ed.1936); Admur, "Copyright Law and Practice" (1936); Ricker v. General Electric Co., 2 Cir., 162 F.2d 141, 142; Arnstein v. Edward B. Marks Music Corporation, 2 Cir., 82 F.2d 275; Sheldon v. Metro-Goldwyn Pictures Corporation, 2 Cir., 81 F.2d 49, 54; Gerlach-Barklow Co. v. Morris & Bendien, 2 Cir., 23 F.2d 159, 161.

The life of a copyright is much longer than that of a design patent. For our purposes, the subject matter of a copyright includes, 17 U.S.C.A. § 5(g) and (h): "works of art; models or designs for works of art; reproductions of a work of art." The design patent primarily extends to "any new, original and ornamental design for an article of manufacture". 35 U.S.C.A. § 171.

Plaintiffs do not contend that defendants may not lawfully produce and sell an electric lamp whose base is a sculptured, human, dancing figure. Nor do plaintiffs contend that defendants may not lawfully produce and sell an electric lamp whose base is an *authorized* copy of the sculptured, hu-

man, dancing figures copyrighted by plaintiffs. Plaintiffs argue only that the production and sale of an electric lamp whose base is an *unauthorized* copy of the copyrighted statue of plaintiffs is an infringement of the copyright. Thus, the issue is not whether a design of an electric lamp may be protected as a monopoly by means of a copyrighted registration. Rather, the issue is whether a copyrighted statue may be *copied* irrespective of its use as a statue or as a component part of an electric lamp, or any other article of manufacture.

We append pertinent portions of the Design Patent Statutes and the Copyright Statute:

### The Design Patent Statutes
1842—5 Stat. 543.

Section 3. "* * * That any citizen * * * who by his * * * own industry * * * produced any new and original design for a manufacture, whether of metal or other material or materials, or any new and original design for the printing of woollen, silk, cotton, or other fabrics, *or any new and original design for a bust, statue,* or bas relief or composition in alto or basso relievo, or any new and original impression or ornament, or to be placed on any article of manufacture, the same being formed in marble or other material, or any new and useful pattern, or print, or picture, to be either worked into or worked on, or printed or painted or cast or otherwise fixed on, any article of manufacture, or *any new and original shape or configuration of any article of manufacture* * * * may [obtain] a patent therefor".
1861—12 Stat. 246.

Section 3 of the 1842 Patent Act re-enacted.
1870—16 Stat. 198.

Section 71. "* * * That any person who, by his own industry, genius, efforts, and expense, has invented or produced any new and *original design for a manufacture, bust, statue,* alto-relievo, or bas-relief; any new and original design for the printing of wool(l)en, silk, cotton, or other fabrics; any new and original impression, ornament, pattern, print, or picture, to be printed, painted, cast, or otherwise placed on or worked into any article of manufacture; or *any new, useful, and original shape or configuration of any article of manufacture,* * * * may, * * * obtain a patent therefor."
1874—Section 4929, Revised Statutes.

Section 71 of the 1870 Act re-enacted.
1902—32 Stat. 193.

"Any person who has invented any new, original, and ornamental design for an article of manufacture, * * * may, * * * obtain a patent therefor."
1952—35 U.S.C.A. § 171, 66 Stat. 792.

"Whoever invents any new, original and *ornamental design for an article of manufacture* may obtain a patent therefor, * * *."

### The Copyright Statutes
1870—16 Stat. 198, 212.

Section 86. "* * * any citizen of the United States * * * who shall be the author, inventor, designer, or proprietor of any book, map, chart, dramatic or musical composition, engraving, cut, print, or photograph or negative thereof, or of a painting, drawing, chromo, *statue, statuary, and of models or designs intended to be perfected as works of the fine arts,* * * * shall upon complying with the provisions of this act, have the sole liberty of printing, reprinting, publishing, completing, copying, executing, finishing, and vending the same; * * *."

1874—Section 4952, Revised Statutes.
Section 86 of the 1870 Act re-enacted.
1909—35 Stat. 1076.

Section 5. "* * * the application for registration shall specify to which of the following classes the work in which copyright is claimed belongs: * * *

"(g) *Works of art; models or designs for works of art;*

"(h) Reproductions of a work of art; * * *."

1947—17 U.S.C.A. § 5, 61 Stat. 652.

Section 5 of the 1909 Act re-enacted. (Italics ours.)

Also we set out the applicable Copyright Regulations of 1926 and 1950:

1926
Regulation

17 U.S.C.A. (1927) following section 53.

"12. (g) *Works of art and models or designs for works of art.*—This term includes all works belonging fairly to the *so-called fine arts.* (Paintings, drawings and sculpture.)

"*The protection of productions of the industrial arts utilitarian in purpose and character,* even if artistically made or ornamented *depends upon action under the patent law*; but registration in the Copyright Office has been made to protect artistic drawings notwithstanding they may afterwards be utilized for articles of manufacture.

"*Toys, games, dolls,* advertising novelties, instruments or tools of any kind, glassware, embroideries, garments, laces, woven fabrics, *or similar articles are examples. The exclusive right to make and sell such articles, should not be sought by copyright registration.*"

Present Regulation

1950
Regulation
(as amended to July 1, 1952)

17 U.S.C.A. (1952) following section 207.

§ 202.8 "Works of art (Class G)— (a) In general. This class includes works of artistic craftsmanship, in so far as their form but *not their mechanical or utilitarian aspects are concerned,* such as artstic jewelry, enamels, glassware, and tapestries, as well as all works belonging to the fine arts, such as paintings, drawings and sculpture. * * *" (Italics ours.)

Certainly very germane here is the testimony of Mr. Arthur Fisher, Register of Copyrights, who speaks from experience and with authority. He is in charge of the Copyright Office and supervises the registration of claims to copyright and the making of rules and regulations by that office. He testified that at the time he came to the Copyright Office in 1946 the practice was well established of registering "any work which in our opinion is a work of art, even though such work has a mechanical or utilitarian aspect." Mr. Fisher further testified that this practice is now covered by Regulation 202.8. From his testimony, we quote:

" * * * it is the practice of the Copyright Office to make a determination as to whether the work submitted is or is not a work of art. The phrase 'insofar as their form but not their mechanical or utilitarian aspects are concerned' is interpreted by the office and by our examiners to permit them to deal only with the question of whether the work is a work of artistic craftsmanship, and they consider, it is our practice to consider as immaterial whether the work may also have a mechanical or utilitarian aspect.

"We do not consider that we are registering or dealing with that mechanical or utilitarian aspect but are only dealing with the artistic aspect of the work which is submitted under an application for a work of art.

"I might give some example of that. For example, if this Daumier etching, engraving that I have on the walls were framed and were submitted to us with some indication that it was to be used as a modern tea tray with a stand, our office would deal only with the artistic aspect of the work and would not be concerned with the fact that it also had a utilitarian use or purpose.

"Again, we frequently will receive applications for the registration of paintings on plates, for example. We register the painting on the plate but we are not concerned with the fact that the material upon which the painting is made may be intended as an article of utility for the handling of food. In other words the practice of the office with respect to this phrase about which I am asked is not to undertake to register or deal with the mechanical or utilitarian aspects, but exclusively

to determine whether the work that is submitted to us is a work of art and we disregard the question of whether it has in addition a mechanical or utilitarian function."

Space limitations prevent any extended discussion of the historical development through the years of the Copyright and Design Patent Statutes. It is worthy of note, in connection with our case, however, that in 1902 Congress narrowed the Design Patent Statute to exclude statuary. Even more important was the change in the Copyright Statute when the term "works of the fine arts" found in the 1870 Statute was changed and broadened by the substitution in the Statute of 1909 of the words "works of art". Certainly there are many works of art not included in the fine arts. Mr. Herbert Putnam, Librarian of Congress, testifying before a Committee of the House of Representatives, 1906, stated:

"* * * the term 'work of art' is deliberately intended as a broader specification than 'works of the fine arts' in the present statute with the idea that there is subject-matter (for instance, of applied design, not yet within the province of design patents), which may properly be entitled to protection under the Copyright Law." See Hearings before Committee of Patents, House of Representatives, on S. 6330 & H. R. 19853, 59th Cong., 1st. Sess. June 6–9, 1906, p. 11.

■ Concededly, a copyright does not purport to give to the copyrightee any rights to the mechanical or utilitarian uses of a work of art. A copyright does, however, protect the work of art *qua* work of art without regard to any functional use to which it might be put. A subsequent utilization of a work of art in an article of manufacture in no way affects the right of the copyright owner to be protected against infringement of the work of art itself. The critical inquiry, therefore, is not whether the particular work sought to be registered has utility but whether it is a work of art irrespective of its utility.

Since 1909, it seems to have been the practice of the Copyright Office to grant copyrights to works of art, and to deny copyrights to purely utilitarian objects. An object of artistic conception in a standard art form—e. g., sculpture or painting—has not been denied registration merely because of its possible utilitarian aspects. It is the work of art that is thus protected, not its utilitarian aspects. Thus copyright registration has been granted for stained glass windows, bas-relief bronze doors, sculptures in book-ends, candlestick holders and statuary lamps.

On the other hand, it has been the practice of the Copyright Office since 1909 to refuse copyright registration *only* to those works of a wholly utilitarian nature, which could not be called works of art although they might possess pleasing design. Rejection has been placed on the ground that protection for such works lay only under the Design Patent Law. Thus, registration has been refused for designs for refrigerators, clocks, stoves, gasoline pumps and oil dispensers.

■ When an agency of the United States is empowered by a federal statute to issue regulations under, and also to administer and apply, that statute, and when the agency over a course of years applies that statute in a certain way, that application should be given great weight when a court is called upon to determine the meaning of the statute. Cf. Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831; Merchants National Bank of Boston v. Commissioner, 320 U.S. 256, 260, 64 S.Ct. 108, 88 L.Ed. 35; Textile Mills Securities Corp. v. Commissioner, 314 U.S. 326, 338, 339, 62 S.Ct. 272, 86 L.Ed. 249.

Said Mr. Justice Holmes in Bleistein v. Donaldson Lithographing Co., 188 U.S. 239, at page 251, 23 S.Ct. at page 300 (in 1903 before the 1909 Copyright Law):

"A picture is none the less a picture, and none the less a subject of copyright, that it is used for an advertisement. And if pictures may be used to advertise soap, or the theatre, or monthly magazines, as they are, they may be used to advertise a circus."

See, also, Pellegrini v. Allegrini, D. C., 2 F.2d 610; Jones Bros. Co. v. Underkoffler,

D. C., 16 F.Supp. 729. Would not Mr. Justice Holmes, in the instant case, say that a statue is just as much a work of art when used to support a lamp as when it is displayed in an art gallery?

Consider Rodin's celebrated statue, "The Thinker." No one can deny that it is a "work of art" by any definition of the term. Yet it is a matter of common knowledge that this work can—and has, been used in book ends. Under the decision below, the book end form cannot be covered by a copyright of the statue form. We hardly think Congress intended this extreme and harsh result. The same observations might be made of many of the works of the great Benvenuto Cellini which had, potentially at least, utilitarian aspects.

We now proceed to a discussion of certain of the decided cases which seem to be most closely in point. Defendants rely heavily on Stein v. Expert Lamp Co., D. C., 96 F. Supp. 97, affirmed 7 Cir., 188 F.2d 611, certiorari denied 342 U.S. 829, 72 S.Ct. 53, 96 L.Ed. 627. The opinions of District Judge LaBuy in the District Court in this case and Circuit Judge Kerner in the Court of Appeals each cover less than two printed pages. In Judge LaBuy's opinion he states, 96 F.Supp. at page 97:

"In plaintiff's reply brief it is asserted two models of the statuettes, one female and one male, were submitted to the copyright office and these models were in the 'form of lamp bases having the threaded mounting stub to receive a lamp socket'."

Again, 96 F.Supp. at page 98:

"It would seem that plaintiff's submission of the statuettes with the lamp mounting stubs to the copyright office was evidence of the practical use to which they were intended to be put. Had it been merely the statuette, use of the statuette thereafter in any practical manner would not remove it from the scope of copyright protection. Having submitted the statuette as a lamp base, thereby limiting the use of the statuette, plaintiff cannot monopolize such use under the copyright statu[t]e."

And Judge Kerner remarked, 188 F.2d at page 612:

"It is true that plaintiffs have never manufactured and sold any statuettes such as they registered in the Copyright Office; they have, however, manufactured and sold electric table lamps which embody the design of the copyrighted statuettes, marked with a copyright notice, * * *."

In the case before us, the statuettes were submitted to the Copyright Office in statuette form, not in the form of lamp bases. And some, though not many, of the copyrighted statuettes have been sold by plaintiffs as, and in the form of, statuettes. If this case be not distinguishable, we decline to follow it.

Stein v. Benaderet, D. C., 109 F.Supp. 364, followed the Expert case. District Judge Picard, however, made this pertinent observation, 109 F.Supp. at page 365:

"When the Stein v. Expert Lamp Co., supra, opinion was first published by Judge LaBuy in the district court it was open to objection that the court had misunderstood the facts; that he was under the impression that when the statuettes were presented to the Copyright Office they displayed wires and sockets attached thereto so that it was apparent right from the beginning that they were to be used as lamp bases. However, this mistake was rectified before the matter reached the court of appeals after plaintiffs had directed the district court's attention to his alleged error and who then ruled that it was immaterial whether the article copyrighted had wires or sockets since it was obviously intended to be used for a lamp base."

In Stein v. Rosenthal, D. C., 103 F.Supp. 227, District Judge Tolin refused to follow the Expert case. He pointed out 103 F.Supp. at page 229:

"The photographs of the statuettes deposited with the Copyright Office, as part of the claimed copyright in a reproduction of a work of art, are photographs of mere statues alone without electrical assemblies, lamp shades, lamp

mounting stubs or any other addition to the purely artistic sculpture. Insofar as the copyright registration shows, the several works registered are statues only. There is no suggestion in any of the several claims to copyright of any claim except the form of the figures. There are no mechanical or utilitarian aspects to the statues. None of the claims to copyright suggest any utilitarian use and if adaptability to such a purpose were to be sought solely from examination of the copyrighted material, the result would be negative."

And again, 103 F.Supp. at page 230, he stated:

"The point, insofar as this case is concerned, is simply that the copyrighted material is in itself non-utilitarian and non-mechanical. Protection is not dissipated by taking an unadulterated object of art as copyrighted and integrating it into commercially valuable merchandise. The appropriateness of copyright registration is determined by the character of the registered work of art as registered and not by the ability, intent or hope of the registrant to use it as a dress for a utilitarian object. Copyright protection is not reserved exclusively to proprietors who do not intend to earn money by commercialization of their art."

Also, 103 F.Supp. at page 231, Judge Tolin remarked:

"Having qualified for registration by reason of its purely artistic character, the question presented is whether an intent on the part of the claimant to copy such protected sculpture in such a way as to artistically enhance some separate and utilitarian article of manufacture destroys the right to copyright. The argument that this is so is but another vehicle to carry defendants' philosophy that if the artist intends to profit by his creation he cannot acquire protection. To uphold this argument would be to require the Judicial inquiry to plumb the mind of every copyright proprietor and determine his plans and intentions as of the time of registration. This impossibility is not contemplated by the Statute."

We greatly prefer the reasoning here to that in the Expert case. It is quite clear that the District Judge in our case relied heavily on the Expert case and found "unconvincing the District Court's reasoning" in the Rosenthal case.

For Law Review notes taking exception to the Expert case, see 27 Indiana L.J. 130; 21 George Washington L.Rev. 353; 66 Harvard L.Rev. 877. We append a brief extract from each of these notes:

"This language indicates the purpose of the regulations to be an extension of copyright registration to all works of artistic craftsmanship even though the work may be embodied in an article that is essentially utilitarian rather than aesthetic in purpose." 27 Indiana L.J. 131.

"It would appear, then, from the decisions reached in the foregoing cases, that it does not matter to what subsequent use the copyrighted article is to be put, so long as the article, as submitted to the Copyright Office, is purely and simply a work of art." 21 Geo. Wash.L.Rev. 359.

"The argument that useful articles purporting to be works of art should be excluded from copyright because they may qualify for a design patent is not convincing." 66 Harv.L.Rev. 882.

See, also, Derenberg, "Copyright Law," 1948 Annual Survey of American Law, 777; Weil, "Copyright Law," 625; Umbreit, "A Consideration of Copyright Law," 87 Univ. of Pa.L.Rev. 932.

King Features Syndicate v. Fleischer, 2 Cir., 299 F. 533, 534, involved an issue somewhat similar to that of the instant case. There the "Barney Google and Spark Plug" cartoons were copyrighted. These copyrights were based on sketches deposited in the Copyright Office. The defendants copied the sketches in a three-dimensional doll form. The Circuit Court of Appeals squarely rejected the argument that execution of the art in a different form avoided infringement.

King Features Syndicate **v.** Fleischer was followed a decade later by Fleischer Studios v. Ralph A. Freundlich, Inc., 2 Cir., 73 F.2d 276. Here the Court held that a doll in the form of "Betty Boop" infringed the Betty Boop cartoons which were copyrighted as works of art. In Fleischer Studios v. Ralph A. Freundlich, Inc., the copyright proprietor, through a licensee, distributed thousands of toys and dolls like those accused as infringements. This did not alter the relief granted since the doll copies in each instance embodied the artistic conception of "Betty Boop." In Hill v. Whalen & Martell, D.C., 220 F. 359, a dramatic performance using actors dressed like "Mutt" and "Jeff" was held to infringe the copyrighted " 'Mutt' and 'Jeff' " cartoons. These cases differed from the instant case in that there the copyrightee did not use the copyrighted material in a form different from the form under which the material was copyrighted. In our case, the material was copyrighted as statuettes, but was afterwards embodied by the copyrightee in a lamp base. Nor did the plaintiffs here create any fictional characters and associate them by name, such as "Barney Google" or "Betty Boop," which became well known to the public.

We are not impressed by the contention of counsel for defendants that the plaintiffs have here misused their copyrights and should on that ground be denied relief. Cf. Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 788, 62 S.Ct. 402, 86 L.Ed. 363; E. I. Horsman & Aetna Doll Co. v. Kaufman, 2 Cir., 286 F. 372, certiorari denied 261 U.S. 615, 43 S.Ct. 361, 67 L.Ed. 828. The equities here, we think, lie with the plaintiffs, not with the defendants, who deliberately and meticulously copied the copyrighted statuettes by incorporating them into lamp bases.

It is strenuously contended by plaintiffs, and by the Government in its brief as *amicus curiæ*, that the Copyright Statute and the Design Patent Statute are overlapping—in other words, that there is a field in which an applicant, at his option, could secure either a copyright or a design patent. This is vigorously denied by defendants. We do not think it necessary, in order to decide the case before us, to pass upon this important question.

All that we hold, and all that we need hold, is that the copyrights of the statuettes granted to plaintiffs were valid, even though plaintiffs intended primarily to use these statuettes in the form of lamp bases and did so use them, and that these copyrights were clearly infringed by defendants, who minutely copied these statuettes in the form of bases for lamps. Plaintiffs are, accordingly, entitled to the appropriate forms of relief usually granted in such cases.

The judgment of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion.

Reversed and remanded.